**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**DOCKET No.**

# Complaint

## (Bench Trial)

**SHERRY SCALERCIO-ISENBERG**
--------------------------------------------------------x
               Plaintiff  (ProSe)


-against-


**CREDIT SUISSE Group**
------------------------------------------------------------------x
         (Defendant#1)


**SELECT PORTFOLIO SERVICING,INC. (SPS)**
------------------------------------------------------------x
         (Defendant#2)


**Mitchell Scott Kurtz,esq.**
-----------------------------------------------------------x
         (Defendant#3)


**Robert D. Bailey,esq.**
-----------------------------------------------------------x
         (Defendant#4)

## I.  Court Jurisdiction and Venue

 This court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1332.  Venue is proper for the following reasons:

1. Defendant #1 is licensed under New York law with business operations at a Corporate office located at 11 Madison Ave,  New York, NY. 10010

2. Defendant #2 is licensed under New York law as a Debt Collector, New York City— **Collection Agency License#1170514**   with a business office location at  11 Madison Ave,  New York, NY. 10010
3. Defendant#3 is a lawyer who works under the business name Parker Ibrahim &Berg (PIB Law)  with a business office located in Summerset New Jersey
4.  Defendant#4 is a lawyer who works under the business name Parker Ibrahim &Berg (PIB Law) a business office located in Summerset New Jersey

5. **The Plaintiff is a New Jersey resident** and alleges Federal violations arising from at least four Federal laws under the Consumer Protection Act of 2010.

6. The allegations in this Complaint have **monetary damages in excess of $75,000.00**.

    Relief resides in this District Court.


##   II.  Introduction and Background

7.  This case arises from a Residential Mortgage - Backed Security (RMBS) Transaction, involving the Defendants and their deep business connection with the Wallstreet Powerhouse, Goldman Sachs, who, was convicted of RMBS Fraud in 2016 and has two related mortgage fraud  lawsuits filed against them for their part in this Mortgage fraud scheme which violates several federal laws.


8.  **The Defendants play a key role  in Goldman Sachs RMBS** business scheme, whereby, Residential Mortgage Loans are bought and sold,

forcing Consumers, who are residential homeowners,  to become Customers of the Defendants through the Wallstreet RMBS business.

9.  **After a Consumer is forced to become a Customer of Goldman Sachs and the Defendants**,  they are defrauded and
 held  financially hostage with false and inaccurate information appearing on Mortgage Statements, Notices and letters, produced by the Defendants and **false Credit** information is furnished and reported about the Consumer to all the Credit Reporting Agencies to block and prevent the Consumer  from refinancing with a new Mortgage Lender!    The false, derogatory information furnished by the Defendants denies the Consumer, [the Plaintiff in this case], from qualifying for a Mortgage Refinance;  the Plaintiff is blocked for years!  No access to her own money invested for years, and the monthly mortgage payments are stolen & Diverted to a bogus account titled "Unapplied", an Account directed and controlled by the Defendants.

**10. The Consumer is powerless  against the  Wallstreet Powerhouse!** Consumers cannot  stop Goldman Sachs from buying their mortgage and having the Defendants as the Mortgage Servicer whom, both, have a Criminal  business reputation in the RMBS market  with at least two Class Action lawsuits filed against them with allegations of Defrauding Customers and **severely harassing and threatening**  any Customer who dares to  bring forward allegations of Mortgage fraud and Mortgage Servicing fraud!

## III.   Judiciary Law Section487 and Material Facts of Evidence

11.       **Judiciary Law  Section 487 applies to this case, whereby,  there is fraud and deceit upon the Court and upon the Plaintiff**  by Defendant#3 and by Defendant#4.

12.   Mr. Kurtz and Mr. Bailey in their professional capacities, deceived the New Jersey District Court and a Sussex County Judge, and also the  New Jersey Sparta Township Police department, by filing a false Police report against the Plaintiff, in order to obtain a Search & Seize Order from a Judge and gain access to the Plaintiff's home inside and outside to intimidate and harass her!

13.   A False email with a threat, was created by the two Defendant Lawyers, purporting the email  was from the Plaintiff and they admitted the email as evidence to the Sussex County Judge,  Judge Gavin, who in turn, issued a Search  & Seize Order without any further & proper Due Diligence!  A severe harassment and intimidation scheme against the Plaintiff and her husband, for filing a lawsuit against Select Portfolio Servicing, Inc., with allegations of Mortgage Servicing fraud under the Federal Consumer Protection laws.


   14.   The false Police report filed by the Lawyers caused an illegal Search & Seize Order which, was served and executed by the Sparta New Jersey Police, on the Plaintiff.
**15.   On August 25,2020, Six  Sparta Police Officers** showed up at the Plaintiff's front door and searched the home, believing the Defendants' Lawyer lies and no due diligence by a local Sussex County Judge.  A Lawyer game to torment, harass and torture the Plaintiff, a message to drop the lawsuit and shut up or else!  All part of the fraud scheme so they can continue to  steal her money and force a fraudulent default and a false foreclosure to steal the beautiful home in Sparta New Jersey!
16.  The Sparta Chief of Police, Mr. Neil Spidaletto, opened an investigation and a Sparta Police Detective came to the Plaintiff's home and took photos of the original emails the Plaintiff sent to Defendant #3 and #4;   proving, the Lawyers of PIB law altered the Plaintiff's original emails and created the false email for which, was the source used to illegally obtain a Search-Seize Order against the Plaintiff.


17.  The Plaintiff and her husband have endured  the torturous treatment by the Defendants for more than two years, before and after, filing a lawsuit in the New Jersey District court after she became aware of the  Mortgage Fraud in 2019 and January 2020, which was blatantly apparent when she called her Broker to refinance and he alerted her to the fraud published on her Credit report whereby, her recent 4 months of mortgage payments were falsely reported as not having been made!

18.  The Plaintiff immediately disputed the false Credit information with every relevant business and followed guidance from the relevant Consumer laws and immediately disputed the fraud with the Credit Reporting Agencies and with the **Creditor** MTGLQ /Goldman Sachs and also the **Mortgage Servicer** Select Portfolio Servicing Inc.  All of these large Corporate institutions refused to correct, <u>delete</u> and <u>permanently</u>  <u>remove</u>  the false and inaccurate information from the Plaintiff's Credit Report and they continued to Furnish the False, Disputed information to the CRA's which is a violation of the FCRA!

19.  Despite the many formal, documented Legal Disputes, the Defendants ignored Federal laws and knowingly continued to Damage the Plaintiff financially and reputationally blocking her ability to access over $400,000.00  of equity savings so she and her husband can pay for the kid's college education and other critical life necessities.

20. **The Plaintiff is left with only one option to stop the Fraud and damages occurring and accumulating for more than two years**!  She must file multiple lawsuits against each and every Perpetrator who is harassing her and her husband, every month, with Extortion and Coercion Demand letters and foreclosure threats!

21. Stealing & diverting their money every month to a Bogus Account, set up & controlled by the Defendants, **Forcing a Default** on the mortgage, Refusing to correct the Mortgage Statements, the Pay-off statements and correctly process and apply the monthly mortgage payments.

   **FOUR YEARS  of detailed Disputes  pursuant to the <u>FCRA 15U.S.C</u>. §1681  and pursuant to 1<u>5 U.S. Code § 1692g</u>. V<u>alidation of debts – Disputed debts</u>**


   <u>**See  the following Dispute Exhibits**</u>

**CS.70  Legal Dispute June 11,2019**

   **CS.71  CREDIT REPORT Dispute SEP 2019**

**CS.72  Legal Dispute Nov/Dec 2019**

**CS.73 Legal Dispute August 2020**
**CS.74 Legal Dispute April 12,2021**

**CS.75 Legal Dispute Dec 2021**

**CS.76 Legal Dispute     MAR,2022**

**CS.77 Legal Dispute     APR,2022**

22.  The Plaintiff filed a related lawsuit against the Credit Reporting Agency  TransUnion for FCRA violations connected to the Defendants false  information being Furnished to TransUnion causing substantial financial damages to the Plaintiff, in excess of $400,000.00.

23.  The Law:

 Pursuant to 15 U.S. Code § 1692g.Validation of debts states the following:
DISPUTED DEBTS

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof.**

**24.  FURNISHER" - A Debt Collector or Creditor  who provides Credit information to a Credit Reporting Agency  about a Consumer's debt obligation.    Under the Fair Credit Reporting Act (FCRA) a "Furnisher" is a creditor or a third party that provides information about a consumer to a credit reporting agency (CRA).  The FCRA provides standards and**

**guidelines to be followed by furnishers in an attempt to assure the accuracy of the information being provided to the CRA.**

**25.  IF the Consumer has disputed the erroneous  information appearing on the Credit  Report to the Creditor named, who is also a Furnisher of the information and  who continues furnishing the FALSE/ERRONEOUS CREDIT INFORMATION to a Credit Reporting agency, they   are  in violation of the FCRA.   The Creditor  and Furnisher  must immediately stop furnishing the Disputed information to the CRA.    The CRA must immediately investigate, and if the information can no longer be verified, the CRA must  delete and permanently remove the false, disputed data.   Contradictory information is not justification to publish the disputed information on the Consumer's Credit report.  The disputed data must be deleted and permanently removed.**

26.   Material facts of the date of the Mortgage Servicing transfer timing and  the mortgage security- loan sale.

   **On April 1,2019,** the Plaintiff received an email from the Shellpoint Mortgage Servicing  Compliance dept. Ms. Deborah Elliot, who informed her  the loan, referring to the Isenberg's Mortgage loan, owned by MetLife, was sold back to MTGLQ Investors LP. (a Goldman Sachs entity), See email copied below for convenience, and is also filed as  **exhibit# CS.88**

I Sherry Scalercio-Isenberg state under the penalty of perjury, the email copied below is a true & correct copy of the original email.

**From:** Loan Servicing [mailto:loanservicing@shellpointmtg.com]
**Sent:** Monday, April 01, 2019 10:27 AM
**To:** sherrysherryisenberg
**Subject:** RE: violations of TCPA U.S.C. 227

Good morning Ms. Isenberg,

Shellpoint requires the verification of the mailing address and the last four digits of the Social Security Number ("SSN") to verify we have made contact with the correct individual, before releasing private loan information. If the homeowner is not comfortable providing the last four digits of their SSN, we can verify the mailing address and two additional pieces of information, such as the date the last payment was made, and the monthly payment amount.

Shellpoint verifies the above information in order to protect your privacy and in compliance with the Fair Debt Collection Practices Act ("FDCPA"). If you would like the calls to discontinue, please submit a Cease and Desist request via email or in writing to the address below:

Shellpoint Mortgage Servicing
P. O. Box 10826
Greenville, SC 29603
Email: loanservicing@shellpointmtg.com
Fax: 866-467-1183

Please feel free to contact our Customer Service Department at 800-365-7107 to determine why you were being contacted by Shellpoint. Please note, you will have to verify the above information when calling Shellpoint.

Additionally, your loan is no longer owned by MetLife.  Your loan was sold back to MTGLQ Investors L.P.

If you have any further questions or concerns, please utilize the designated correspondence address referenced above, or contact our Customer Service Department at the number provided above.

Thank you,

Compliance Department
Shellpoint Mortgage Servicing

27. **During the time MetLife owned the  Isenberg's Mortgage, also known as the Buyer/Investor, there were no Mortgage Servicing issues.**   Monthly Mortgage payments were processed and correctly applied to the Isenberg's Mortgage Account.

 28. **The inaccuracies and Fraud <u>surfaced after</u>** MetLife sold the loan back to MTGLQ (A Goldman Sachs entity) and the Mortgage Servicing was

transferred from Shellpoint to the Defendants.  All Mortgage payments have been  made on time by the Plaintiff!

The exhibits listed below and attached, are proof the Defendants received the money and have stolen/Diverted every monthly Mortgage payment from 2019 to an "Unapplied" Account and never apply the money directly to the Outstanding Mortgage Principle AND furthermore, the Defendants Furnish a NO Payment or LATE Payment  status to all the Credit Reporting Agencies! A violation of the FCRA.  Intentionally blocking and preventing the Plaintiff from refinancing to get rid of all business connections to the defendants!

### IV. Material Facts of evidence - Mortgage Payment Exhibits & supporting Mortgage statements containing Mortgage  Servicing fraud & Violations.

**CS.01 Jan 2019 payment**

**CS.02 Feb 2019 payment**

**CS.03 March 2019 payment**

**CS.04 April 2019 payment**
**CS.05 May 2019 payment**
**CS.06 June 2019 payment**
 **CS.07 July 2019 payment**
**CS.08 August 2019 payment**
 **CS.09 September 2019 payment**
 **CS.10 October 2019 payment**
 **CS.11 November 2019 payment**
**CS.12 December 2019 payment**
**CS.13 January 2020 payment**
**CS.14  February 2020 payment**
**CS.15 March 2020 payment**
**CS.16 April 2020payment**
**CS.17 May 2020 payment**
**CS.18 June payment**
**CS.19 July 2020 payment**
**CS.20 August 2020 payment**
**CS.21 September 2020 payment**

**CS.22 October 2020 payment**
**CS.23 November 2020 payment**
**CS.24 December 2020payment**

**CS.25 Jan 2021 payment**
**CS.26 Feb 2021 payment**

**CS.27 Mar  2021 payment**
**CS.28 April 2021 payment**
**CS.29 May 2021 payment**
**CS.30 June 2021 payment**
**CS.31 July 2021 payment**
**CS.32 Aug 2021 payment**

**CS.33 Sep 2021 payment**

**CS.34 Oct 2021 payment**

**CS.35 Nov 2021 payment**

**CS.36 Dec 2021 payment**
**CS.37 Jan 2022 payment**
**CS.38 Feb 2022 payment**

**CS.39 Mar 2022 payment**

**CS.40 Apr 2022 payment**

29.  The PNC Bank payment confirmations are  Proof Beyond A Reasonable Doubt the Plaintiff and her Husband  have made every Mortgage Payment on time, and the Defendants have reported to the Credit Reporting Agencies false, Late payments of 30 days, 60 days  and have continued to increase the late payment status to over **200 days late, diverting  each and every payment to an account titled "Unapplied, stealing the Plaintiff's money and violating Mortgage Servicing laws!**

See Exhibit numbers **CS.48  CS.49, CS.50 CS.51   SPS mortgage statements.**

**V.  Corroborating evidence :**  The August 17,2021 Investigation includes Witness Statements from the Defendants' employees.

30.  SPS Customer Service Representatives stated via a phone call that the Lawyers of PIB law firm, have put instructions on the Isenberg's account to divert the payments to the "Unapplied account.

## VI.0  Causes Of Action

**Count One**:  **In Violation of 12 U.S. Code § 2605 - Servicing of mortgage loans and administration of escrow accounts.**

### The law:

12 U.S.C. § 2605 (g), states that

31.  During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under SECTION 1681A OF TITLE 15).

**(f)**
**Damages and costs**

**Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

**(1) Individuals In the case of any action by an individual, an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and**
**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance**

32. The Plaintiff does not have an escrow account.  An escrow account was  **not** established in the originating 2010 Quicken Loans mortgage papers nor was there an escrow account in 2011 when the mortgage was held by Chase Bank, see exhibit#CS.85 Chase Bank mortgage statement.  The escrow box is blank.

33. The Defendants fraudulently opened an escrow account under the Plaintiff's name and added a n **extortion demand of over $80,000.00** and furthermore  have failed to correctly apply More than 25 Mortgage payments, made by  the Plaintiff for over two years!  The Defendants  have Not  correctly applied the Mortgage payments  to the Isenberg's Mortgage Loan Account Number  0026162479

34.  More than $80,000.00 has been  incorrectly & fraudulently added to the Isenberg's monthly Mortgage Statement and an Extortion payment has been  demanded  from 2019 through the January-February  2022 Payoff Statement **See exhibit# CS.50.**


## <u>Count Two</u>:    In Violation of  15U.S.C. 1681 (e), (b), (i)

## FCRA FAIR CREDIT REPORTING Act.


35.  The defendants have furnished false, fraudulent information to all the Credit Reporting Agencies  from 2019 through 2022 after the Plaintiff has repeatedly disputed the false, inaccurate, fraudulent information!


**See   Dispute Exhibits  CS.70 through CS.75   and**

 **Exhibit# CS.84 TransUnion Credit Report from  2019 with false information furnished by the Defendants.**


36. The Plaintiff disputed the false, inaccurate, information appearing on the mortgage statements and Notices.  Specifically,

  The Outstanding Principle Balance that was  suddenly increased by over $100,000.00. <u>and disputed</u>,  **See Exhibit CS.71**

37.  An Escrow Account line was suddenly added;  **the Plaintiff has never established an** escrow account with neither the Originating 2010 Lender, Quicken Loans nor in 2011 with Chase Bank who purchased the  mortgage loan and also Serviced the loan.

 **See Exhibi**t **CS. 85 Chase Bank Mortgage Statement 2011.**


38.  The negative Escrow amount of over $75,000.00 then $80,000.00 was added by the Defendants on the Mortgage Statements.   The Plaintiff immediately  disputed this line-item and has continued  to dispute and point out the fraud for over two years directly to the Creditor MTGLQ Investors LP./Goldman Sachs and the Mortgage Servicer,   Select Portfolio Servicing.

39.  **The Defendants did not correct any of the information that was  disputed and are in violation of several federal laws.  Federal laws that are supposed to protect Consumers.**

**See Exhibit# CS.49 DEC 2021 PAYOFF STATEMENT**

**See Exhibit# CS.50 JAN FEB 2022 PAYOFF STATEMENT**

40.  The Defendants have furnished False, Inaccurate information to all the Credit reporting Agencies from  JAN 2020 through MAY 2022,  severely damaging the Plaintiff's Credit for which, has caused  her and her Husband to be denied  a Mortgage Refinance with Quicken Loans, Wells Fargo Bank, PNC Bank, and a Home Improvement loan with Ener Bank USA.

## See exhibit # CS.81 Wells Fargo  denial and

## CS.80 Ener Bank denial.

41. The violations and damage Started  on or about December 2019 and has continued for over three years, despite, the formal Disputes the Plaintiff has  filed every month and the lawsuits filed to address each specific Consumer Law violation and the Company in violation of each law.    See the following  Exhibits  with Disputes:

**CS.70  Legal Dispute June 11,2019**
   **CS.71  Legal Dispute Nov/Dec 2019**

   **CS.72 Legal Dispute August 2020**

   **CS.73 Legal Dispute Dec 2021**

   **CS.74 Legal Dispute April 12,2021**
   **CS.75 Legal Dispute March 2022**

---

**Count Three:**   **In violation of 15U.S.C. 1692  FDCPA FAIR DEBT COLLECTION PRACTICES ACT**

**42.0  The FDCPA broadly prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of the Debt.**

**The Defendants have produced Monthly Mortgage Statements with false, fraudulent and deceptive**  information after April 1,2019 after Shellpoint Mortgage Servicing notified the Plaintiff there was a change in ownership of the Isenberg's mortgage loan, and subsequently, the Mortgage Servicing was transferred from Shellpoint to the Defendants.

The Mortgage Statements the Plaintiff received in  the U.S. Postal mail contained many inaccuracies such as:

The Outstanding Mortgage Principle Balance was wrong; it was showing an increase of over $100,000.00. for which the Plaintiff disputed in November 2019  directly to the Creditor MTGLQInvestors LP./Goldman Sachs
**See exhibit**

**CS.71  Legal Dispute Nov/Dec 2019**

**43**.  A false line item was suddenly added to the Mortgage Statement, line    titled Escrow & Taxes and   a negative amount of over $75,000.00 was listed, indicating an unauthorized  Escrow account  was  opened by the Defendants.

The Defendants also listed an Escrow shortage of over $75,000.00 and demanded payment or else, the Defendants will foreclose on the Isenberg's home.

44.  The Plaintiff immediately disputed all the fraudulent information appearing on the Mortgage Statements.  **The Defendants failed to correct the information and retaliated against the Plaintiff through their Lawyers at PIB Law firm.**

In retaliation, Ms. Karen Seymour, former General Counsel of Goldman Sachs, threatened the Plaintiff through a lawyer named Mitchell Scott Kurtz who  represents Select Portfolio Servicing Inc., the Mortgage Servicer hired by Goldman Sachs.

45.  On August 25,2020, more than a year after the Plaintiff disputed the inaccuracies on the mortgage statements and ultimately filed a lawsuit,  the

Deceptive Acts and Practices by the lawyers, representing Select Portfolio Servicing, increased in severity against the Plaintiff.

46.  **The Defendants, through their Attorney's, harassed the Plaintiff by filing a false Police** Report with Sparta Police Department and obtained a Search & Seize Order from a Judge in a Township 30 miles or so away from the Plaintiff's Township of residence. A harassment tactic by Opposing Counsel to see the inside and outside of the home and get pictures captured on the Police Body cams videos, SIX individual  Police Body cam videos!  All of which were provided to the Plaintiff, per a Court Order.

47.  Through investigation by the Sparta Police, it was determined the Select Portfolio Servicing Lawyers of PIB Law firm, crafted an email with a threat, purporting it was from the Plaintiff as a means to obtain a Search & Seize Order from a Judge giving them access to the Plaintiff's home inside & Outside!

### Count Four:  In Violation of  15U.S.C. 1681 (e), (b),

### FCRA (FAIR CREDIT REPORTING Act)

48.  **The Plaintiff disputed the false, inaccurate,  Outstanding Principle Balance that suddenly increased in 1 month by more than $100,000.00 [one hundred thousand dollars]  on the Mortgage Statements.**

49.  The Dispute was made for over two years directly to  the Creditor MTGLQ Investors LP./Goldman Sachs and the Mortgage Servicer, Select Portfolio Servicing.

50. **The Defendants did not correct any of the information that was  disputed and violated the FCRA by furnishing false, inaccurate, disputed information to all the Credit Reporting Agencies.**

## See Dispute Exhibits  CS.70 through CS.75

51.  **The FCRA also requires the furnisher to participate when a consumer disputes information contained in his credit report.  The dispute process, known as a reinvestigation, requires the furnisher to take an active role in responding to a consumer's complaint.  A furnisher that fails to participate or that fails to conduct a proper investigation can be liable to the consumer.**

**It's illegal to report information that you know or believe is inaccurate**

**See exhibits CS70 – CS.78  with false, inaccurate, Fraud data disputed.**

### Count Five:  In violation of  15 U.S. Code § 1692g.

**Validation of debts states the following:**

**Disputed debts:**

52.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt, or any disputed portion thereof.**

53.  The Defendants did not correct,  any of the information that was  disputed **and Did Not cease collection of the Disputed Debt.**  And furthermore, the Defendants continued to furnish the Disputed  Debt information to all the Credit Reporting Agencies and continued to harass and  threaten the Plaintiff with a home foreclosure!

**The Defendants violated  15 U.S. Code § 1692g.**

**See Dispute Exhibits  CS.70 through CS.78**

### Count Six:  In Violation of  New York General Business Law §349 (a)

Under New York General Business law §349 **Deceptive acts and Practices** Section **§**349(a) of the New York General Business Law declares as unlawful Deceptive acts and practices in the conduct of any **business, trade or commerce or in the furnishing of any service in this state." A prima facie case under that statute**

**requires a showing that the defendant's acts are directed to consumers, that defendant is engaging in an act or practice that is deceptive or misleading in a material way, and that** **Plaintiff has been injured by reason thereof.**

**The defendants**

**54.  The Plaintiff has suffered emotional distress from the threats she receives from the Defendants in letters sent to her home  , the  false Police report to obtain access  to search her home  as a harassment tactic  by the  Lawyers of Parker Ibrahim & Berg  who is Opposing Counsel.**

**55.  The lawyers of PIB law firm  deceived the Sparta Police with a false police report as an act to harass the Prose Plaintiff,  who is Opposing Counsel and who filed a lawsuit against the Mortgage Servicer for Mortgage Servicing fraud and other federal law violations.**

**56. The Plaintiff's Mortgage payment is $1,000.00 more per month than the Refinance rates of 2019-2021.**

**57.  The Plaintiff has been financially damaged for over 3 years by the false information  furnished by the Defendants, for which is denying her & her husband access to over $400,000.00 of their own  money invested and needed to pay for their kid's college education!**

## Mortgage Servicing  Fraud Investigation on August 17,2021

### Material Facts of evidence:

58.  **On August 17,2021,**  through many phone calls and conversations with Select Portfolio Servicing employees.[Names will be kept confidential at

this point to protect the Witnesses that may be called to testify], The Plaintiff uncovered  some key material facts from Three first-line  Customer Service employees, and one Executive level employee, who confirmed the following:

59.  My  partial mortgage payment of **$500.00 on  August 9,2021** was diverted to an "Unapplied Account .  The SPS employees also confirmed my full payments of $3,131.19 were also showing diverted to an **Unapplied Account** in or around

60.  April 1, 2019, after, Goldman Sachs purchased the Isenberg's loan and the Mortgage Servicing was being transferred from Shellpoint to SPS.
7.2  SPS confirmed two Account numbers, which  appeared at different times on the Mortgage Statements, which  indicates possible money laundering, when Goldman purchased the Loan.

61. An SPS employee stated  a check **for $42,808.09** was issued during the Mortgage Servicing Transfer in early 2019 when Goldman Sachs purchased the Isenberg's.  the $42,808.09 was added as a Debt to the Isenberg's Mortgage loan account.   .  No one has been able explain and account for, **why this was issued and  who cashed the check.**

**62.  Evidence shows on the Face of the Notice that the Outstanding Mortgage  Principle Balance increased   by over $100,000.00 from October 2019 to November 2019, reflected on the Mortgage Statement.  The Plaintiff  immediately disputed the fraudulent increase to the balance by contacting  Goldman Sachs General Counsel and CEO  David Solomon.  The email is also  an exhibit in the lawsuit filed against Goldman Sachs case# 1:21-CV-04124 [KPF].**

# VII.  <u>Conclusion and  the law</u>

63. The Plaintiff has been harassed and tormented by the Defendants in retaliation for exposing the  many inaccuracies and fraud  on the Mortgage Statements and the False, Disputed Credit information being furnished   to the CRA's, which is a violation of 15 U.S.C.1681. The Defendants are diverting every monthly payment the Plaintiff

makes to an "Unapplied Account,   which can only be  labeled as **Financial Mortgage Fraud**, a White-Collar Crime of Extortion and Coercion by the Defendants.

64.  The Mortgage Statements produced by the Defendants and the harassment, prove the Defendants are in violation of the FDCPA.

 There is Proof Beyond A Reasonable Doubt the Plaintiff has made every mortgage payment and the Defendants are not correctly processing and applying the Mortgage payments.

Furthermore, all the Disputed data and information is still appearing on the monthly Mortgage Statements and the Mortgage Pay-off statements and further; **The Defendants Have Not ceased collection of the disputed items pursuant to <u>15 U.S. Code § 1692g which states:</u>**

<u>**DISPUTED DEBTS**</u>

**If the <u>consumer</u> notifies the <u>debt</u> collector in writing within the thirty-day period described in subsection (a) that the <u>debt,</u> or any portion thereof, is disputed, or that the <u>consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof.</u>**

65. The Plaintiff and her husband are severely, Financially  damaged through at least 2026, as stated in the Transunion Credit Report.  **See exhibit# CS.89 Credit Report** An Exhibit also filed  with lawsuit 2:20-cv-11222 against TransUnion for FCRA violations .

66**. The damaging, false, Credit information is denying the Plaintiff and her husband, access to  their  <u>own</u> money  of over $400,000.00 invested and saved for over 10 years!  A primary residential home is supposed to be a safe place to invest and save  money.**

67.  **The Plaintiff will continue to suffer financial damages for at least the next five years due to the false Credit information <u>furnished</u> by the Defendants, who knowingly, willingly and intentionally, furnished  the false information  to the Credit reporting Agencies After the Plaintiff  repeatedly disputed the false, inaccurate and fraudulent information for over two years!**

## <u>VIII.   Prayer For Relief</u>

68. Wherefore, the Plaintiff prays that the Court Grants her a Judgement against the Defendants for the Damages [actual & proximate], she has  suffered and will continue to suffer and be damaged in ways unknown & unforeseen, by the many Denials  of a mortgage refinance  for a lower interest rate and a lower monthly payment  from 2020 through 2027.

Punitive damages are clear, for the torturous harassment she & her husband have endured for over two years, including;  Saturday morning Certified Mail threat letters, demanding a signature at the front door!  And threatening phone calls every week, documented and proven with Court exhibits  in the first lawsuit 3:20-cv-04501 [AET]. District of NJ.

### <u>Exhibits in support of Damages:</u>

CS. 80 ENER Bank Home  Loan Denial

CS.81  Wells Fargo Bank Refinance  Denial

CS.82 Q-loans Refinance Denial Broker email with Servicing Fraud on the Plaintiff's Credit report.

CS.83 Court exhibit in related lawsuit # 1:21-cv-04124 [KPF]

CS.84 Transunion Credit Report 2019 with false  Delinquency Mortgage  payment  information  furnished  by  Select  Portfolio Servicing.

69.  The Plaintiff respectfully asks the Court to **enforce Judiciary Law Section487** and respectfully requests a Punitive Damages award to deter the Defendants from engaging in further legal misconduct to harass and torment Opposing Counsel and Adversaries, intentionally

causing financial harm and severe  emotional distress and  subverting the flow of Justice.

70. The Plaintiff is pursuing a total financial settlement for damages in the amount of   $2 million dollars to settle all claims against all Defendants including, all legal costs to date, and future damages unknown and unforeseen at this time.

Respectfully submitted,

_____
**Sherry Scalercio-Isenberg       Date:  April 18, 2022**
 **Plaintiff, ProSe**

**Phone:  (973)-534-7095**

**Email:  sherryisenberg@PTD.net**