UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHERRY SCALERCIO-ISENBERG,**<br><br>Plaintiff,<br><br>v.<br><br>**CREDIT SUISSE GROUP, SELECT PORTFOLIO SERVICING, INC. (SPS), MITCHELL SCOTT KURTZ, and ROBERT D. BAILEY,**<br><br>Defendants. | Civ. No. 22-2705 (KM) (AME)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

      Now before the Court are the following motions: the motion of Plaintiff Sherry Scalercio-Isenberg (DE 18)[1] for default judgment as to Defendant Select Portfolio Servicing, Inc. ("SPS"); the motion of plaintiff (DE 25) for default judgment as to Defendant Credit Suisse Group; the motion of SPS (DE 27) to dismiss the complaint under Rule 4(m); and the motion of Defendants Mitchell Scott Kurtz and Robert D. Bailey (DE 21) to dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6). For the reasons set forth below, the motions of plaintiff for entry of default judgment (DE 18; DE 25) are **DENIED**; the motion of SPS (DE 27) is **DENIED**, without prejudice; and the motion of Kurtz and Bailey (DE 21) is **GRANTED**. All claims against Kurtz and Bailey are dismissed, without prejudice, for failure to state a claim under Rule 12(b)(6).

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

I.   **BACKGROUND**

Plaintiff, appearing *pro se*, brings this lawsuit against Defendants in connection with her residential mortgage. Plaintiff asserts that she has made timely mortgage payments, but Defendants have diverted her payments to an "unapplied" account and failed to apply those payments towards her mortgage balance.[2] (Compl. pp. 9, 18–19.) Defendants, she alleges, then falsely reported these to credit reporting agencies as late payments. (*Id.* p. 9.)

Plaintiff also asserts that Defendants opened an unauthorized escrow account under her name in relation to her mortgage and sent her mortgage statements reflecting an outstanding balance increase of over $100,000. (*Id.* p. 12, 14–15.) Plaintiff asserts that she has disputed the false information "directly to the Creditor MTGLQ Investors LP/Goldman Sachs and the Mortgage Servicer, Select Portfolio Servicing," but Defendants have failed to correct the information. (*Id.* p. 15.) She also states that Defendants "block[ed] her ability to access over $400,000.00 of equity savings." (*Id.* p. 5.)

Plaintiff asserts that Kurtz and Bailey filed a false police report "to obtain access to search her home as a harassment tactic." (*Id.* p. 17.) Specifically, they "deceived the New Jersey District Court and a Sussex County Judge, and also the New Jersey Sparta Township Police department, by filing a false Police report against the Plaintiff, in order to obtain a Search & Seize Order from a Judge and gain access to the Plaintiff's home inside and outside to intimidate and harass her[.]" (*Id.* p. 3.) Plaintiff asserts that Kurtz and Bailey altered an email from her to obtain the search warrant. (*Id.* p. 4.)

On April 19, 2022, plaintiff filed a complaint alleging the following causes of action: violation of the Real Estate Settlement Practices Act, 12 U.S.C. § 2605 (Count One); violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 (e), (b), (i) (Count Two) and 15 U.S.C. § 1681 (e), (b) (Count Four); violation of

---

[2]   I recite the facts as pled in the complaint, assuming them to be true for purposes of this motion. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (Count Three) and 15 U.S.C. § 1692g (Count Five); violation of New York General Business Law § 349(a) (Count Six); violation of New York Judiciary Law § 487 (unidentified count); and mortgage servicing fraud (unidentified court).

## II. DISCUSSION

### A. Motion for Default Judgment against Defendant Credit Suisse Group

On August 1, 2022, plaintiff filed a motion for default judgment against Credit Suisse Group. In her motion, plaintiff asserts that "Credit Suisse Group was properly served a Summons and Complaint by the Process Server, Undisputed Legal, on May 19, 2022 at the corporate office located at 11 Madison [A]venue New York, NY 10110, for which the General Counsel, Ms. Pam Fleming, provided details and agreed to accept service on behalf of Credit Suisse." (DE 25 p. 2.) However, according to plaintiff, "Credit Suisse Group has failed to respond to the Summons & Complaint." *Id.*

Credit Suisse Group opposes the motion for default judgment.[3] (DE 30.) Attached to their opposition is a declaration by Ms. Fleming explaining that she is not General Counsel for Credit Suisse Group, or even an employee of Credit Suisse Group.[4] (DE 30-1 ¶¶ 2, 4.) Rather, Ms. Fleming is a secondee in the legal department of another company, Credit Suisse Securities (USA) LLC ("CS Securities USA"), which is not named as a defendant in this action.[5] (*Id.* ¶ 2.)

---

[3]   Credit Suisse Group submits its opposition "solely to respond to Plaintiff's motion and expressly denies that it is subject to personal jurisdiction in this Court." (DE 30 p. 1.)

[4]   Ms. Fleming also states that the correct name of the corporation is "Credit Suisse Group AG." (DE 30-1 ¶ 3.) For consistency, I will refer to this defendant by the name listed on the docket: "Credit Suisse Group."

[5]   Credit Suisse Group is incorporated under the laws of Switzerland with a headquarters and principal place of business at Paradeplatz 8, Zurich, Switzerland, and has no offices or employees in the United States. (DE 30-1 ¶ 5.) CS Securities USA, however, is a Delaware company headquartered at 11 Madison Avenue, New York, New York 10010. (*Id.*) CS Securities USA's ultimate parent company is Credit Suisse Group. (*Id.*)

Ms. Fleming states that she did not accept service on behalf of Credit Suisse Group and, to her knowledge, neither did anyone else. (*Id.* ¶¶ 9, 10, 12.)

Where there is a question as to the validity of service, the burden of proof of service lies on "the party asserting the validity of service." *Grand Entmt. Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). "This burden can be met by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (quoting *State Farm Mut. v. Tz'Doko V'Chesed*, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008)). "In the absence of service of process . . . a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

Plaintiff has not met her burden. Plaintiff's assertion that Credit Suisse Group was served with the complaint and summons is unsupported by the record. There is no affidavit of service filed on the docket or attached to plaintiff's moving papers. *See Isaac v. Sigman*, No. 16-cv-5345, 2017 WL 2267264, at *4 (D.N.J. May 24, 2017) (dismissing complaint where the docket reflected that the *pro se* plaintiff had not served the defendant or requested an extension of time to effectuate service). Even if plaintiff intended to serve CS Securities USA, that company is not named as a defendant in this action and plaintiff does not provide any evidence to support that they were served.

Therefore, plaintiff's motion for default judgment against Credit Suisse Group is denied.

### B. Motion for Default Judgment against Defendant Select Portfolio Servicing, Inc. and SPS's Motion to Dismiss

Plaintiff filed a motion for default judgment against SPS on June 28, 2022. (DE 18.) In her motion, plaintiff asserts that a summons was issued by the U.S. District Court for the Southern District of New York on April 27, 2022, prior to the transfer of the case to this district. (DE 20 p. 2.) Then, according to plaintiff, SPS was served on April 29, 2022, with a copy of the summons and complaint, as shown by the affidavit of service filed on the docket. (DE 17.)

4

SPS opposed the default judgment motion in a letter to the Court on July 5, 2022 (DE 19) and, on August 19, 2022, SPS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 4(m) (DE 27-1).[6] SPS asserts that it was never served with a summons and that the terms of Judge Swain's transfer order stated that no summons would issue from that court. (*Id.* p. 2 (referring to DE 5).)

Under Rule 4(m), a plaintiff must serve the summons and complaint on a defendant within 90 days after the filing of the complaint. Fed. R. Civ. P. 4(m); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* plaintiffs are responsible for having the summons and complaint timely served on defendants because, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants"). If a plaintiff does not serve the summons and complaint within the allotted time, Rule 4(m) provides that "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see Powell v. Symons*, 680 F.3d 301, 310 n.8 (3d Cir. 2012).

As stated in Section II.A., *supra*, when there is a question as to the validity of service, the burden of proof of service lies on "the party asserting the validity of service." *Grand Entmt. Grp.*, 988 F.2d at 488. "This burden can be met by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills*, 406 F. Supp. 3d at 392 (quoting *State Farm Mut.*, 543 F. Supp. 2d at 428.

Plaintiff has not met her burden. Plaintiff's assertion that a summons was issued by the Southern District of New York on April 27, 2022, is unsupported by the record. On May 2, 2022, Judge Swain ordered that this case be transferred from the Southern District of New York to this district and

---

[6] SPS stated in its motion to dismiss that it was making a "limited appearance only and specifically reserve[d] any and all rights, defenses and challenges not argued herein." (DE 27-1 p. 1 n.1.)

stated: "A summons shall not issue from this Court." (DE 5.) Accordingly, no summons from the Southern District of New York appears on the docket. Despite no summons having been issued, plaintiff filed an affidavit of service stating that SPS was served with a copy of the complaint and summons on April 29, 2022. No summons is attached to the affidavit, however. (DE 17.) The first summons issued as to any defendant, including SPS, and the only summons appearing on the docket, issued from this district, *i.e.,* the U.S. District Court for the District of New Jersey, on May 12, 2022. (DE 10.) Therefore, there is no evidence to support that a valid summons was served on SPS on April 29, 2022. Additionally, plaintiff does not claim to have served SPS with a copy of the May 12th summons.

For those reasons, plaintiff's motion for default judgment against SPS is denied. SPS not having been served, its motion to dismiss (DE 27-1) is administrative terminated without prejudice, subject to renewal or refiling as may become appropriate.

### C. Motion to Dismiss by Defendants Mitchell Scott Kurtz and Robert D. Bailey

Kurtz and Bailey filed their motion to dismiss on July 6, 2022. (DE 21.) Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to

6

relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### 1. Real Estate Settlement Practices Act (Count One)

Plaintiff alleges a violation of the Real Estate Settlement Practices Act, 12 U.S.C. § 2605 ("RESPA"). RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). "Congress has explicitly authorized a private right of action for a borrower to enforce RESPA and its regulations, including Regulation X, against a loan servicer." *Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (citing 12 C.F.R. § 1024.41(a); 12 U.S.C. § 2605(f)).

Plaintiff alleges a violation of subsection (e) and (g). Under 12 U.S.C. 2605(e):

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

Additionally, under 12 U.S.C. 2605(g):

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the

7

> property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

Kurtz and Bailey seek dismissal of the RESPA claim because they are not "servicers" under the statute. (DE 21-1 pp. 12–13.) A "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. 2605(i)(2). Plaintiff alleges that Kurtz and Bailey are attorneys; she does not allege any facts to support a conclusion that either Kurtz or Bailey is a "servicer" of her loan. (*See* Compl. pp. 2, 14.) Therefore, the motion of Kurtz and Bailey to dismiss the RESPA claim is granted.

## 2. Fair Credit Reporting Act (Counts Two and Four)

Plaintiff alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Specifically, she alleges a violation of "15[ ]U.S.C. [§] 1681(e), (b), (i)" and "15[ ]U.S.C. [§] 1681(e), (b)." (Compl. pp. 12, 15.) The only subsection cited by plaintiff that exists is 15 U.S.C. § 1681(b), which states the purpose of the FCRA:

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

Kurtz and Bailey seek dismissal of this claim because they are not "consumer reporting agencies" under the statute. (DE 21-1 p. 14.) A "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

8

information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). Plaintiff does not allege any facts to support that either Kurtz or Bailey is a "consumer reporting agency." Therefore, any claim against Kurtz or Bailey premised on 15 U.S.C. § 1681(b) is dismissed.

Plaintiff may have intended to bring a claim for violation of 15 U.S.C. § 1681e(b).[7] That provision states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Again, plaintiff fails to allege that either Kurtz or Bailey is a "consumer reporting agency." Therefore, any claim against Kurtz or Bailey under 15 U.S.C. § 1681e(b), to the extent such a claim may have been intended, is dismissed.

Generally speaking, the FCRA provides that persons who furnish data to consumer reporting agencies must provide accurate information. 15 U.S.C. § 1681s-2(a). However, no private right of action exists under that general provision. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (citing 15 U.S.C. § 1681s-2(c), (d)). A plaintiff may only bring a claim against a furnisher of credit information, based on a failure to furnish correct information to a consumer reporting agency, where (1) the plaintiff sent a "notice of disputed information to a consumer reporting agency," (2) the consumer reporting agency then notified the furnisher of the dispute, and (3) the "furnisher failed to investigate and modify the inaccurate information." *Henderson v. Equable Ascent Fin.*, LLC, 2011 WL 5429631, at *3 (D.N.J. Nov. 4, 2011) (citations omitted). "The furnisher's duty to investigate is not triggered until it receives notice from the credit reporting agency of the consumer's dispute." *Id.* (citations omitted).

---

[7]   15 U.S.C. § 1681e does not contain a subsection (i).

Plaintiff alleges that "[t]he defendants" provided false information to the credit reporting agencies, despite her disputing such false information, and failed to correct the false information. (Compl. p. 12; *see generally* Compl. ¶¶ 35–41, 48–51.) Plaintiff specifies that she has disputed the false information "directly to the Creditor MTGLQ Investors LP./Goldman Sachs and the Mortgage Servicer, Select Portfolio Servicing." (*Id.* pp. 12, 15.) To the extent plaintiff seeks to bring a FCRA claim against Kurtz and Bailey, she has failed to allege any facts to support that either Kurtz or Bailey received notice of the dispute from a consumer reporting agency or that they failed to investigate and correct the information. Therefore, the motion of Kurtz and Bailey to dismiss the FCRA claim is granted.

### 3. Fair Debt Collection Practices Act (Counts Three and Five)

Plaintiff alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). The Fair Debt Collection Practices Act "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013) (citing 15 U.S.C. § 1692). By its terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while insuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692. "The statute creates a private right of action against debt collectors who fail to comply with its provisions." *Grubb v. Green Tree Servicing, LLC*, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014) (citing 15 U.S.C. § 1692k; *Marx*, 568 U.S. at 374 n.1; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Additionally, "[a] threshold requirement for application

10

of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt'." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir.1987).

Kurtz and Bailey seek dismissal of the FDCPA claim because they are not "debt collectors" under the statute. (DE 21-1 p. 16.) A "debt collector" is defined as "any person" who either "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiff fails to allege any facts to support that either Kurtz or Bailey is engaged in a "business the principal purpose of which is the collection of any debts," or that the individual defendants regularly engage in the collection of debts. Therefore, the motion of Kurtz and Bailey to dismiss the FDCPA claim is granted.

### 4. New York General Business Law § 349 (Count Six)[8]

Plaintiff alleges a violation of New York General Business Law § 349. To state a claim under Section 349, a plaintiff must allege (1) "that the challenged

---

[8] When plaintiff initiated this action, she purported to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (Compl. p. 2.) However, plaintiff fails to provide sufficient information to determine the citizenship of defendants Kurtz and Bailey. For purposes of diversity jurisdiction, citizenship is synonymous with domicile, and "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973). Factors relevant to domicile include "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972) (internal quotation omitted). Here, plaintiff, who is a New Jersey resident, only provides the place of business for Kurtz and Bailey, which happens to also be New Jersey. Based on that alone, plaintiff would not be able to satisfy diversity jurisdiction.

Nevertheless, plaintiff has asserted other claims arising under federal law, *see* Sections III.C.1–3, *supra*. So even if this Court did not have diversity jurisdiction under § 1332, it would still have federal question jurisdiction over plaintiff's federal claims under § 1331, allowing me to exercise supplemental jurisdiction over the remaining state claims under § 1367, which I will do here. In sum, I find that the

act or practice was consumer-oriented"; (2) "that it was misleading in a material way"; and (3) "that the plaintiff was harmed as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). Section 349 "was intended to be a consumer protection statute." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007). "In contrast to private contract disputes, unique to the parties, consumer-oriented conduct within the meaning of the statute requires acts or practices that have a broader impact on consumers at large." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (quotations and citations omitted). Where the "acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met." *Id.* (quotations and citations omitted).

Kurtz and Bailey seek dismissal of the Section 349 claim because the alleged actions are not "consumer-oriented." (DE 21-1 pp. 16–17.) Plaintiff asserts that "Defendants" sent letters to her home, filed a false police report in order to search her home, caused her financial damage, and prevented her and her husband from accessing over $400,000. (Compl. ¶¶ 54–57.) Those actions arise from a private dispute between the parties. Plaintiff fails to allege any facts to support that the conduct of Kurtz or Bailey affected consumers at large. Therefore, the "consumer-oriented" requirement is not satisfied, and the motion of Kurtz and Bailey to dismiss the Section 349 claim is granted.

**5. New York Judiciary Law § 487 (unidentified count)**

Plaintiff alleges a violation of New York Judiciary Law § 487. Under Section 487, an attorney "who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is guilty of a misdemeanor and may be liable to the injured party for treble damages in a civil action." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 177 (N.Y. 2020). "Section 487 provides a private right of action against

---

Court has subject matter jurisdiction to decide the pending motion of Kurtz and Bailey to dismiss the state law claims.

lawyers who cause injury through deceitful conduct." *Lipman v. Rodenbach*, 852 F. App'x 578, 580 n.1 (2d Cir. 2021).

Plaintiff asserts that Kurtz and Bailey violated Section 487 by "deceiv[ing] the New Jersey District Court and a Sussex County Judge, and also the New Jersey Sparta Township Police department, by filing a false Police report against the Plaintiff, in order to obtain a Search & Seize Order from a Judge and gain access to the Plaintiff's home inside and outside to intimidate and harass her[.]" (Compl. p. 3.) Plaintiff asserts that Kurtz and Bailey altered an email from her to obtain the search warrant. (*Id.* at 4.) To remedy the alleged violation, plaintiff seeks an award of punitive damages for an unspecified amount in order to "deter the Defendants from engaging in further legal misconduct." (*Id.* at 20–21.)

Kurtz and Bailey seek dismissal of the Section 487 claim because Plaintiff cannot assert a violation of this New York statute in a New Jersey court. (DE 21-1 p. 18.) Where appropriate, of course, "federal courts are often called upon to apply the laws of other states." *Meridian Consulting I Corp., Inc. v. Eurotec Canada Ltd.*, 2021 WL 689132, at *16 (D.N.J. Feb. 22, 2021). In this case, however, the conduct at issue occurred entirely in New Jersey and this New York statute does not have extraterritorial effect.[9]

The Second Circuit has recognized that Section 487 is intended to regulate, "through criminal and civil sanctions, the conduct of litigation before the New York courts." *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978). Accordingly, Section 487 does not apply to an attorney's actions occurring outside of New York, even if that attorney is admitted to practice in New York. *Id.* Numerous New York federal and state courts have adopted that holding. *See, e.g., Doscher v. Mannatt, Phelps & Phillips, LLP*, 148 A.D.3d 523,

---

[9] Plaintiff asserts in her opposition to the motion to dismiss: "All the allegations in this Complaint arose in and from, Manhattan County New York, and continued in New York City, Manhattan County[.]" (DE 23 p. 2.) That conclusory claim, however, is factually vapid. The Complaint does not mention any action taken by Kurtz or Bailey in a New York court in support of the Section 487 claim.

13

524 (N.Y. 1st Dept. 2017) ("Moreover, courts have held that the statute does not apply to conduct outside New York's territorial borders or to administrative proceedings, observing that its purpose is to regulate the manner in which litigation is conducted before the courts of this State." (collecting cases)); *Kaye Scholer LLP v. CNA Holdings, Inc.*, 2010 WL 1779917, at *1 (S.D.N.Y. Apr. 28, 2010) (denying leave to amend in order to add a Section 487 claim because the allegations concerned neither "the conduct of litigation before the New York courts" nor "the integrity of the truth-seeking processes of the New York courts").

In one case, however, a New York trial court declined to follow *Schertenleib* because, the court reasoned, New York courts have a sufficient interest in supervising attorneys admitted to its bar and protecting resident clients harmed by those attorneys. *Cinao v. Reers*, 893 N.Y.S.2d 851, 859 (N.Y. Sup. Ct. 2010). Neither of those considerations apply here—this is not a New York court and plaintiff is not a New York resident.[10] Therefore, she cannot assert a claim for violation of Section 487 in this court. Kurtz and Bailey's motion to dismiss this claim is granted.

As an alternative, Kurtz and Bailey seek dismissal of the Section 487 claim because the statute does not provide for punitive damages. (DE 21-1 p. 18.) Contrary to Kurtz and Bailey's assertion, New York courts have recognized that the damages awarded under Section 487 are punitive. *See McCabe v. St. Paul Fire & Marine Ins. Co.*, 79 A.D.3d 1612, 1614 (N.Y. 4th Dep't 2010) ("[A]n award of treble damages under section 487 is punitive in nature."); *Specialized Indus. Servs. Corp. v. Carter*, 99 A.D.3d 692, 693 (N.Y. 2d Dep't 2012) ("Treble damages awarded under Judiciary Law § 487 are not designed to compensate a

---

[10] Additionally, at least one court in this district has agreed with the holding in *Schertenleib* and described the *Cinao* decision as an outlier. *See Williams v. BASF Catalysts LLC*, 2012 WL 6204182, at *13–14 (D.N.J. Dec. 12, 2012), *aff'd in part, rev'd in part and remanded*, 765 F.3d 306 (3d Cir. 2014); *see also Kaye Scholer LLP*, 2010 WL 1779917, at *2 (describing *Cinao* as an outlier and stating the decision does not provide any basis to depart from the "established and well-reasoned precedent" in *Schertenleib*).

14

plaintiff for injury to property or pecuniary interests . . . . They are designed to punish attorneys who violate the statute and to deter them from betraying their special obligation to protect the integrity of the courts and foster their truth-seeking function." (internal citations and quotations omitted)).

But even where Section 487 would permit punitive damages, they must be predicated on plaintiff's pleading of "actual damages caused by the deceit or collusion." *Rice v. City of New York*, 275 F. Supp. 3d 395, 409–10 (E.D.N.Y. 2017); *see also Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 710 (S.D.N.Y. 2019) ("[A] plaintiff also has to establish that damages were caused by the deceit in order to succeed on a Section 487 claim."). Plaintiff fails to plead any facts to support that she suffered actual damages as a result of Kurtz and Bailey's alleged misconduct. Therefore, I would also dismiss the Section 487 claim based on this alternative ground.[11]

### 6. Common Law Fraud (unidentified count)

Plaintiff also titles a section of her Complaint "Mortgage Servicing Fraud Investigation on August 17, 2021," which Kurtz and Bailey interpret to assert a claim of common law fraud. (Compl. pp. 17–18.) To state a claim of common law fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). The

---

[11] Plaintiff responds that she has been "severely disadvantaged" by Judge Swain's order transferring Plaintiff's complaint from the Southern District of New York to this Court because, among other reasons, Kurtz and Bailey will be able to "get away with their unlawful behaviors and actions under [Section] 487." (DE 23 p. 3.) Plaintiff also asserts that "[t]here was no fair due process nor due diligence from Judge Laura Taylor Swain." (*Id.* p. 2.) To the extent Plaintiff is challenging the transfer order in her opposition brief, I agree with the reasoning in Judge Swain's decision—the Southern District of New York was not the proper venue because Plaintiff fails to allege that "a substantial part of the events or omissions giving rise to her claims occurred in [New York]" and, instead, "alleges that the events giving rise to her claims occurred in New Jersey." (DE 5 p. 4.)

15

heightened pleading requirements of Rule 9(b) apply. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011). Any claim of common law fraud against Kurtz or Bailey based on this section of the Complaint, to the extent plaintiff intended to assert such a claim, is dismissed because this section does not attribute any statement, let alone a material misrepresentation, to either defendant. (*See* Compl. pp. 17–18.)[12]

### D. Motion for a Filing Injunction against Plaintiff

Kurtz and Bailey seek an injunction preventing plaintiff from filing any future lawsuits against them, or other attorneys of Parker Ibrahim & Berg LLP, involving allegations related to the servicing of plaintiff's loan, the subject property, or fraud without prior judicial approval. (DE 21-1 pp. 18–20.) In *Matter of Packer Ave. Associates*, the Third Circuit recognized that the All Writs Act, 28 U.S.C. § 1651, gives this district court the power to issue an injunction to restrict the filing of meritless pleadings. 884 F.2d 745, 746 (3d Cir. 1989). However, the Third Circuit cautioned that it is an extreme remedy which must "be narrowly tailored and sparingly used." *Id.* at 747. "A District Court may enjoin a pro se litigant from future filings so long as the injunction complies with three requirements: (1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case." *Grossberger v. Ruane*, 535 F. App'x 84, 86 (3d Cir.2013) (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)).

At this time, I do not find that plaintiff's actions rise to the level of "continually abusing the judicial process." *See Grossberger*, 535 F. App'x at 86. Although this is plaintiff's third action in this district related to the servicing of

---

[12] Because I find that the Complaint fails to state a claim against Kurtz or Bailey, I need not reach the asserted defenses of res judicata or collateral estoppel. (*See* DE 21-1 pp. 6–11.)

her loan,[13] it is her first complaint against Kurtz and Bailey. Additionally, as stated below, these initial dismissals are entered without prejudice, as is the court's usual practice. Therefore, even assuming that a filing injunction might someday be warranted, that day has not yet arrived.

## III. CONCLUSION

The motions of plaintiff for entry of default judgment against SPS and Credit Suisse Group are denied. The motion of SPS to dismiss the complaint under Rule 4(m) is denied, without prejudice. The motion of Kurtz and Bailey is granted and all claims against Kurtz and Bailey are dismissed for failure to state a claim under Rule 12(b)(6). That dismissal of all claims against Kurtz and Bailey is entered without prejudice to the filing of a proposed amended complaint within 30 days. If no proposed amended complaint is filed, this dismissal shall ripen into a dismissal with prejudice.

A separate order will issue.

Dated: February 28, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[13] *See also Scalercio-Isenberg v. Select Portfolio Servicing Inc.*, No. 20-cv-4501, dismissed Jan. 27, 2021; *Scalercio-Isenberg v. TransUnion, LLC*, 20-cv-11222, dismissed July 11, 2022.

17