<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHERRY SCALERCIO-ISENBERG, | |
| Plaintiff, | Case No. 2:22-cv-02705 (BRM) (AME) |
| v. | |
| SELECT PORTFOLIO SERVICING, INC., *et al.*, | |
| Defendants. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE[1]**

Before the Court is Defendants' Select Portfolio Servicing, Inc. ("SPS"), Brett L. Messinger ("Messinger"), and Kassia Fialkoff's ("Fialkoff") (together, the "Duane Morris Defendants")[2] Motion to Dismiss (ECF No. 54) *pro se* Plaintiff Sherry Scalercio-Isenberg's ("Plaintiff") Amended Complaint (ECF No. 40) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on June 13, 2023. (ECF No. 62.) The Duane Morris Defendants filed a reply on June 21, 2023. (ECF No. 63.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Duane Morris Defendants' Motion to Dismiss (ECF No. 54) is **GRANTED**. Counts I, IV, V, and VI of Plaintiff's Amended Complaint (ECF No. 40) are **DISMISSED WITH PREJUDICE**

---

[1] This matter was reassigned to this Court on November 29, 2023, upon the retirement of the Honorable Kevin McNulty, District Judge. (ECF No. 67.)

[2] Defendants Mitchell Scott Kurtz, Esq., and Robert D. Bailey, Esq., did not participate in this Motion to Dismiss. (ECF No. 54.)

without leave to amend, and Counts II, III, and VII of Plaintiff's Amended Complaint (ECF No. 40) are **DISMISSED WITHOUT PREJUDICE** with leave to amend.

I.   BACKGROUND

   A.   **Factual Background**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises from a home foreclosure due to an unpaid mortgage. Plaintiff attempted to make mortgage payments to SPS, but these payments were placed in an SPS account titled "Unapplied." (ECF No. 40 ¶¶ 21–22.) As a result, the money was never applied to the outstanding mortgage balance, meaning the account balance increased and the non-payment was reported to credit agencies, resulting in negative assessments against Plaintiff's credit rating. (*Id.* ¶ 23.)

In June 2022, Plaintiff received a debt collection notice from Duane Morris, LLP ("Duane Morris") and immediately attempted to contact Duane Morris to indicate she disputed the outstanding amounts listed in the notice. (*Id.* ¶¶ 28–30.) Plaintiff spoke with Fialkoff, who noted her dispute and, in response to a question from Plaintiff, stated she had not filed a notice of appearance on behalf of the Goldman Sachs entity Legacy Mortgage Asset Trust ("LMAT") in any court. (*Id.* ¶¶ 29–31.) Plaintiff filed her initial complaint for this action in the Southern District of New York ("SDNY") on April 19, 2022. (ECF No. 1.) Plaintiff then sent a letter dated June 17, 2022, containing details of this civil action to the Philadelphia office of Duane Morris. (ECF No.

40 ¶ 32.) Plaintiff states that various lawyers engaged in a coordinated campaign of harassment in response to her disputing the outstanding mortgage debt. (*Id.* ¶ 25.)

On July 29, 2022, a Foreclosure Action was filed against the property subject to the mortgage. (*Id.* ¶ 55.) Messinger, in completing the New Jersey Chancery Division Foreclosure Case Information Statement ("FCIS"), did not include the federal lawsuits filed by Plaintiff disputing the debt. (*Id.*)

On or about December 20, 2022, Plaintiff and her husband, Marcus Isenberg ("Isenberg"), made a payment of $100,000 to SPS via their lawyer, Mr. William Askin ("Askin"). (*Id.* ¶ 42.) Askin issued a check for the total amount demanded in the mortgage loan pay-off statement. (*Id.*) Plaintiff and Isenberg then proceeded to sell the home subject to the mortgage. (*Id.* ¶ 43.)

Plaintiff filed the operative Amended Complaint on March 8, 2023. (ECF No. 40.)

### B.    Procedural History

Plaintiff filed her initial Complaint in the SDNY on April 19, 2022. (ECF No. 1.) On May 2, 2022, Judge Laura Taylor Swain ordered the case transferred from the SDNY to the District of New Jersey ("DNJ") on the basis that the events detailed in the Complaint, including the debt collection against Plaintiff and alleged harassment of Plaintiff, occurred in New Jersey. (ECF No. 5 at 3–5.)

On June 28, 2022, Plaintiff moved for Default Judgment against SPS. (ECF No. 18.) On July 6, 2022, Defendants Mitchell Scott Kurtz, Esq. ("Kurtz") and Robert D. Bailey, Esq. ("Bailey") filed a Motion to Dismiss the Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief may be granted. (ECF Nos. 21, 21-1.) On August 1, 2022, Plaintiff moved for Default Judgment against Defendant Credit Suisse Group ("Credit Suisse"). (ECF No. 25.) On

August 19, 2022, SPS filed a Motion to Dismiss the Complaint for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m). (ECF Nos. 27, 27-1.) The Court issued an opinion on February 28, 2023, denying Plaintiff's motions for Default Judgment against SPS and Credit Suisse, denying SPS's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 4(m), and granting Kurtz and Bailey's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 35.) The Court dismissed Plaintiff's claims against Kurtz and Bailey without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.*)

Plaintiff filed an amended complaint on March 8, 2023. (ECF No. 40.) The Amended Complaint[3] alleges the following causes of action: (1) violation of the Racketeer Influenced and Corrupt Organization ("RICO") statute by all Defendants (Count I); (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 18 U.S.C. § 1692, by Messinger (Count II); (3) Conspiracy to Commit Mortgage Fraud and Mortgage Servicing Fraud by all Defendants (Count III); (4) violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, 1683, by all Defendants (Count IV); (5) violation of the FDCPA, 18 U.S.C. § 1692(g), by all Defendants (Count V); (6) Mortgage Fraud by all Defendants (Count VI); and (7) Home Foreclosure Fraud and Perjury by Messinger (Count VII). The Duane Morris Defendants filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 17, 2023. (ECF No. 54.) Plaintiff filed an opposition on June 13, 2023. (ECF No. 62.) The Duane Morris Defendants filed a reply on June 21, 2023. (ECF No. 63.)

---

[3] Plaintiff names the same defendants in her Amended Complaint as she did in her initial Complaint. (ECF Nos. 1, 40.)

### C.      Related Cases

#### 1.       Prior DNJ Action

Plaintiff filed a previous case against SPS in the DNJ on April 20, 2020 (the "Prior DNJ

Action"). (Civ. A. No. 20-04501, ECF No. 1.) The complaint alleged five causes of action: (1)

violation of the FCRA, 15 U.S.C. § 1681 (Count I); (2) Mortgage Fraud under the New Jersey

Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-19 (Count II); (3) violation of the FDCPA,

15 U.S.C. § 1692 (Count III); (4) Extortion (Count IV); and (5) Money Laundering (Count V).

(*Id.*) SPS filed a motion to dismiss the original complaint on May 28, 2020. (*Id.*, ECF No. 7.) The

Honorable Anne E. Thompson, U.S.D.J. ("Judge Thompson") granted the motion and dismissed

the complaint without prejudice on September 30, 2020. (*Id.*, ECF No. 13.)

Plaintiff filed an amended complaint on October 6, 2020. (*Id.*, ECF No. 16.) SPS filed a

motion to dismiss the amended complaint on October 23, 2020. (*Id.*, ECF No. 19.) Judge

Thompson granted the motion and dismissed the amended complaint with prejudice on January

27, 2021. (*Id.*, ECF No. 32.) Judge Thompson dismissed the claims on the following grounds: (1)

Count I because SPS was not put on notice of the credit report dispute by a credit reporting agency;

(2) Count II because SPS did not engage in sale or advertisement of merchandise or real estate; (3)

Count III because SPS does not qualify as a "debt collector"; and (4) Counts IV and V because

New Jersey does not recognize civil extortion and money laundering actions. (*Id.*, ECF No. 32 at

3–5.)

#### 2.       The Foreclosure Action

On July 29, 2022, LMAT filed a Foreclosure Action against Plaintiff, Marcus Isenberg,

and Charter One (the "Foreclosure Action") in the Superior Court of New Jersey, Chancery

Division, Sussex County ("Superior Court"). (Case No. SWC-F-007893-22, Trans. ID.

CHC2022176074.) Plaintiff filed an answer, claiming: Messinger failed to include related cases to the foreclosure in the FCIS; and LMAT was a participant in a mortgage fraud scheme against Plaintiff. (*Id.*, Trans ID. CHC2022271214.) The Superior Court found the answer to be non-contesting and transferred the case to the Office of Foreclosure. (*Id.*, Trans. ID. CHC2022283434.) On December 29, 2022, LMAT voluntarily dismissed the Foreclosure Action without prejudice. (*Id.*, Trans. ID. CHC2022310631.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility

standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to

dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.   DECISION

#### A.   Entire Controversy Doctrine

In reliance upon the New Jersey Entire Controversy doctrine, the Duane Morris Defendants argue Counts I, IV, V, and VI should be dismissed because these claims could have been brought in the Foreclosure Action before the Superior Court (Case No. SWC-F-007893-22). (ECF No. 54-1 at 8–9.) Additionally, the Duane Morris Defendants argue the claims should be dismissed because they exactly mirror the claims brought in Plaintiff's first action before this Court. (*Id.*) Plaintiff argues the counts should not be dismissed based on the Entire Controversy doctrine, as she has alleged "distinct and separate [c]onsumer law violations" against specific defendants, and because "[c]onsumer protection laws cannot be consolidated." (ECF No. 62 ¶ 37.)

The Entire Controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfg. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 988 A.2d 90, 91 (N.J. 2009)). Generally, when determining whether subsequent claims should be barred under the doctrine "the central consideration is whether the claims against the different parties arise from

related facts or the same transaction or series of transactions." *Wadeer*, 110 A.3d at 27 (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1999)). Ultimately, "[t]he doctrine's purposes are to 'encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency.'" *Bank Leumi USA v. Kloss*, 331 F. Supp. 3d 404, 408 (D.N.J. 2018) (quoting *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 868 (2002)). The application of the Entire Controversy doctrine is limited, as "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Bank Leumi*, 331 F. Supp. 3d at 409 (quoting *Fisher v. Yates*, 637 A.2d 546, 552 (N.J. Super. Ct. App. Div. 1994)). The court must also have made a judgment that is "final, valid, and on the merits" for the case to preclude future claims. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 889 (3d Cir. 1997). The Entire Controversy doctrine only applies to state court judgments and does not apply to prior judgments by a federal court. *Russomanno v. Dugan*, Civ. A. No. 20-12336, 2021 WL 1748135, at *4 (D.N.J. May 4, 2021).

Here, there are two relevant prior actions, the first being the Foreclosure Action against the subject property before the Superior Court (Case No. SWC-F-007893-22), and the second being Plaintiff's Prior DNJ Action against SPS (Civ. A. No. 20-04501). The Duane Morris Defendants argue Plaintiff's failure to raise Counts I, IV, V, and VI in either of these actions can each serve as independent bases to dismiss the counts under the Entire Controversy doctrine. (ECF No. 54-1 at 12–13.) The Court will only address the Foreclosure Action for purposes of the Entire Controversy doctrine, as it is well-established the Entire Controversy doctrine does not apply to prior federal court decisions, such as the Prior DNJ Action. *Russomanno*, 2021 WL 1748135 at *4 ("the entire controversy doctrine does not apply where the prior judgment was entered by a federal

court, rather than a New Jersey state court"); *Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 138 (3d Cir. 1999) ("the entire controversy doctrine is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey"); *Simoni v. Luciani*, 872 F. Supp. 2d 382, 388 (D.N.J. 2012) ("[w]hile the entire controversy doctrine is applied by federal courts interpreting a prior state court decision . . . it does not apply to a federal court's interpretation of a prior federal decision. Federal preclusion law governs that question.").

### 1.       The Foreclosure Action

Plaintiff's inclusion of the entire docket of the Foreclosure Action in the Amended Complaint, along with the Court's ability to consider matters of public record, makes it "apparent on the face of the complaint" that the Entire Controversy doctrine is potentially applicable. *See Rycoline* 109 F.3d at 886. Notably, the Amended Complaint includes an image of the entire Superior Court docket from the Foreclosure Action, and states the Superior Court found the foreclosure to be "uncontested." (ECF No. 40 ¶ 56.) Therefore, the Court will consider the Foreclosure Action for the purpose of this Rule 12(b)(6) motion. In considering the Foreclosure Action, the Court may also generally take notice of matters of public record, including the state court judgment and Plaintiff's pleading in the state court matter. *Brunetta v. Egg Harbor Twp. Sch. Dist.*, Civ A. No. 22-7511, 2023 WL 5274529, at *4 (D.N.J. Aug. 16, 2023).

The Foreclosure Action does not bar Plaintiff's claims under the Entire Controversy doctrine because there was no final judgment on the merits in the case. To bar future claims under the Entire Controversy doctrine, a case must have concluded with a judgment that is "final, valid, and on the merits." *Rycoline,* 109 F.3d at 889; *see also Silber v. SN Servicing Corp.*, Civ. A. No. 23-01686, 2023 WL 4702210, at *3 (D.N.J. July 24, 2023) (finding a final judgment must be issued for a foreclosure case to bar future claims under the Entire Controversy doctrine); *Aliperio v. Bank*

*of Am.*, Civ. A. No. 16-01008, 2016 WL 7229114, at *11–12 (D.N.J. Dec. 13, 2016) (finding a dismissal of a mortgage foreclosure action without prejudice was not a final judgment for purposes of the Entire Controversy doctrine). A foreclosure case that is dismissed without prejudice is not a case with a final judgment on the merits, and therefore cannot preclude future claims under the Entire Controversy doctrine. *Silber,* 2023 WL 4702210 at *4 ("[A] notice of voluntary dismissal without prejudice . . . is not the same as a final judgment."); *see also Aliperio*, 2016 WL 7229114 at *11–12 (finding a dismissal of a mortgage foreclosure action without prejudice was not a final judgment). Here, the Foreclosure Action concluded when LMAT voluntarily dismissed the action without prejudice (Case No. SWC-F-007893-22, Trans. ID. CHC2022310631), meaning there was no final judgment on the merits in the case. *See Silber,* 2023 WL 4702210 at *4; *Aliperio*, 2016 WL 7229114 at *11–12. Because there was no final judgment, the Foreclosure Action cannot be used to bar Plaintiff's claims under the Entire Controversy doctrine. *See Rycoline,* 109 F.3d at 889.

### B.   *Res Judicata*

The Duane Morris Defendants argue both types of *res judicata*—issue preclusion and claim preclusion—should be applied to dismiss Counts I, IV, V, and VI of the Amended Complaint, since these claims were already fully litigated in the Prior DNJ Action. (ECF No. 54-1 at 14–18.) The Court will consider each type of *res judicata* in turn, beginning with issue preclusion and then moving to claim preclusion.

The Court will consider the Prior DNJ Action for purposes of the issue preclusion and claim preclusion doctrines, as Plaintiff discusses and criticizes the Judge's decision for the case in her Complaint, and the Court may take notice of matters of public record. (ECF No. 40 ¶¶ 50–53.) For instance, Plaintiff alleges Judge Thompson was "tricked and fooled" in the case and disputes the Judge finding SPS to not be a debt collector under the FDCPA. (*Id.* ¶ 50.) This discussion of

the Prior DNJ Action makes it "apparent on the face of the complaint" that the issue preclusion and claim preclusion doctrines are potentially applicable. *See Rycoline*, 109 F.3d at 886. In considering the Prior DNJ Action, the Court may also generally take notice of matters of public record, including the prior judgment and Plaintiff's pleading in the matter. *See Brunetta*, 2023 WL 5274529 at *4.

### 1.   Issue Preclusion

The Duane Morris Defendants argue Counts I, IV, V, and VI of the Amended Complaint should be dismissed due to issue preclusion. (ECF No. 54-1 at 14–16.) They argue all four of the elements of issue preclusion are met, because (1) the factual allegations underlying Plaintiff's claims in the Prior DNJ Action are identical or substantially similar to the facts supporting her new claims, (2) the issues in the Prior DNJ Action were fully litigated and ended with dismissal, (3) the dismissal order is a conclusive and final order for the Prior DNJ Action, and (4) the Judge in the Prior DNJ Action determined Plaintiff had failed to state a claim upon which relief may be granted, thereby making this an essential fact underlying the judgment. (*Id.*)

Plaintiff argues issue preclusion should not apply to her claims, as "the causes of Action were not fully litigated []or re- litigated." (ECF No. 62 ¶ 56.) Plaintiff also challenges the dismissal of her claims in the Prior DNJ Action, arguing the dismissal was not a valid judgment as "it was not free from error." (*Id.* ¶ 1.4.) Plaintiff claims the Judge failed to consider several exhibits in the Prior DNJ Action and argues the judgment should be ignored due to error. (*Id.*)

Issue preclusion, also known as collateral estoppel, is a doctrine which bars parties from re-litigating an issue determined by a "final and valid" judgment in any future lawsuit. *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010). Courts assess five factors to determine if issue preclusion bars claims in a new litigation:

> (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated; (3) there was a final judgment on the merits; (4) the determination was essential to the earlier judgment; and (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225–226 (D.N.J. 2015). When determining whether an issue is identical between litigations, the issues must be "in substance the same." *Pasqua v. Cnty. of Hunterdon,* Civ. A. No. 15-3501, 2017 WL 5667999, at \*15 (D.N.J. Nov. 27, 2017). In assessing similarity, courts consider "whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *Strassman v. Essential Images*, Civ. A. No. 17-4227, 2018 WL 1251636, at \*5–6 (D.N.J. Mar. 12, 2018) (quoting *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007)).

Counts IV and V of Plaintiff's Amended Complaint should be dismissed for issue preclusion, because these were adjudicated in the decision on Counts I and III from the Prior DNJ Action. The Court will address each count in turn, beginning with Count IV and moving to Count V.

Count I of the Amended Complaint in the Prior DNJ Action (Civ. A. No. 20-04501, ECF No. 16 at 15) bars Count IV of the present Amended Complaint (Civ. A. No. 22-02705, ECF No. 40 ¶ 34). The issues in both counts are substantially the same, with both counts being based on 15 U.S.C. § 1681 and premised on SPS allegedly furnishing false credit information regarding Plaintiff to credit agencies. (Civ. A. No. 20-04501, ECF No. 16 at 15; Civ. A. No. 22-02705, ECF No. 40 ¶ 34.) There is, therefore, a substantial overlap of evidence and identical argumentation between the two claims, with Plaintiff noting in her current amended complaint that her claim in Count IV is based on "years of the disputes made by the Plaintiff." (*Id.*) Although the Prior DNJ

Action ended before discovery could begin, the Court finds the issues litigated in Count I of the Prior DNJ Action, and Count IV of the present action, to be "in substance the same." *See Pasqua*, 2017 WL 5667999 at *15.

Count III of the Amended Complaint in the Prior DNJ Action (Civ. A. No. 20-04501, ECF No. 16 at 16–17) also bars Count V of the present Amended Complaint (Civ. A. No. 22-02705, ECF No. 40 ¶¶ 35–38). Both counts are premised on 15 U.S.C. § 1692 and argue SPS failed to cease collection of the mortgage debt despite Plaintiff's attempts to dispute the amount. (Civ. A. No. 20-04501, ECF No. 16 at 16–17, 19–20; Civ. A. No. 22-02705, ECF No. 40 ¶¶ 35–38.) There is a substantial overlap of evidence, identical argumentation, and identical legal rules for both counts, with Plaintiff again noting Count V is based on "years of consumer disputes made by the Plaintiff." (*Id.* ¶ 38.) Therefore, the Court finds the issues litigated in Count III of the Prior DNJ Action, and Count V of the present action, to be "in substance the same." *See Pasqua*, 2017 WL 5667999 at *15.

Beyond the identity of the issues, the other issue preclusion factors also weigh in favor of precluding Counts IV and V. Plaintiff "actually litigated" the issues to be precluded, as she had a full and fair opportunity to present her claims to the Court in the Prior DNJ Action. *Feng Li v. Peng*, 516 B.R. 26, 44–45 (D.N.J. Aug. 22, 2014); *see also Tobias v. Lakewood Bd. of Educ.*, Civ. A. No. 16-04850, 2020 WL 7334209, at *15 (D.N.J. Dec. 14, 2020) (quoting *Allesandra v. Gross*, 453 A.2d 904, 908–09 (N.J. Super. Ct. App. Div. 1982) (stating an issue is "actually litigated" when "an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined"). The Court's judgment dismissing Plaintiff's prior claims was a "final judgment on the merits" as it terminated the case based on Plaintiff's insufficient pleading of Counts I and III. *Salerno Med. Assocs. v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268, 278

(D.N.J. 2021) (quoting *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012)) (in considering whether a final judgment was made in a prior proceeding, a court will assess "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed"); *Hart v. Wells Fargo Bank, N.A.*, Civ. A. No. 21-14644, 2022 WL 1963666, at *3 (D.N.J. June 6, 2022) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)) ("[T]he doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'"); *Tabrizi v. Nitto, Inc.*, Civ. A. No. 22-1341, 2022 WL 16552859, at *4 (D.N.J. Oct. 31, 2022) (quoting *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)) ("A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect."). The Court in the Prior DNJ Action based its dismissal of the prior claims on Plaintiff's failure to state a claim using the same arguments presented in this case, and this issue was essential to the Court's determination. (Civ. A. No. 20-04501, ECF No. 32 at 3–5); *see also Fields v. Dickerson*, Civ. A. No. 14-778, 2016 WL 3619119, at *5 (D.N.J. July 6, 2016) ("A matter is essential when it was necessary to support the judgment rendered in the final action."); *Neal v. ASTA Funding, Inc.*, Civ. A. No. 13-3438, 2019 WL 522095, at *9 (D.N.J. Feb. 8, 2019) (finding plaintiff's employment relationship with defendant "was essential to the prior judgment, because it had to be determined in order for the arbitrator to determine whether the ITS Agreement's arbitration clause gave him jurisdiction to adjudicate claims against Neal"). Finally, it is undisputed that Plaintiff was a party to the earlier proceeding. (Civ. A. No. 22-02705, ECF No. 40 ¶¶ 50–53.)

 Plaintiff's addition of new defendants in Counts IV and V of the Amended Complaint does not shield the claims from issue preclusion. Rather, it is well established that issue preclusion will

bar all further claims on the same issues, including claims made against new defendants. *See Marcia Copeland v. U.S. Dep't of Just.*, Civ. A. No. 15-7431, 2015 WL 9294810, at *4 (D.N.J. Dec. 21, 2015) (finding issue preclusion barred the assertion of the same claims against new defendants); *Prospect Funding Holdings, LCC v. Breen*, Civ. A. No. 17-3328, 2018 WL 734665, at *5 (D.N.J. Feb. 5, 2018) ("issue preclusion may bar a party from asserting an already-decided issue against a new defendant in a new lawsuit"); *ADP, LLC v. Trueira*, Civ. A. No. 18-3666, 2018 WL 3756951, at *17 (D.N.J. Aug. 8, 2018) ("When a defendant . . . raises the collateral estoppel bar against a plaintiff who previously lost the same issue against another defendant, the application of the doctrine is described as 'defensive' collateral estoppel."). Therefore, Counts IV and V against all the Duane Morris Defendants are barred through the issue preclusion doctrine, and Counts IV and V of the Amended Complaint are dismissed.[4]

Counts I and VI of the Amended Complaint, on the other hand, cannot be dismissed based on issue preclusion, as Plaintiff raises new issues in these counts not previously litigated in the Prior DNJ Action. Counts I and VI of the Amended Complaint are factually distinct from Count II of the Prior DNJ Action, as Count II of the Prior DNJ Action alleged New Jersey consumer law violations relating to SPS's opening of an escrow account to pay Sparta Township taxes (Civ. A. No. 20-04501, ECF No. 16 at 16; ECF No. 32 at 4), whereas Counts I and VI of the current Amended Complaint deal with Defendants' alleged failure to properly apply Plaintiff's mortgage

---

[4] Plaintiff's argument that the Prior DNJ Action should be ignored due to error is inapposite, as it is well-established that prior judgments still have preclusive effect even if they potentially contain errors. *Prospect*, 2018 WL 734665 at *5 (quoting *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 576 (3d Cir. 2002) ("Error in a prior judgment is not a sufficient ground for refusing to give it preclusive effect."); *Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 366 (3d Cir. 2014) (quoting *Del. River*, 290 F.3d at 576) (same); *Fraternal Ord. of Police, Penn-Jersey Lodge 30 v. Del. River Port Auth.*, 924 F.Supp.2d 574, 579 (D.N.J. 2013) (quoting *Del. River*, 290 F.3d at 576) (same).

payments against her mortgage balance, with Count I alleging a RICO violation from this conduct, and Count VI alleging common law fraud from the conduct (Civ. A. No. 22-02705, ECF No. 40 ¶¶ 19–25, 39–43). The Court's dismissal of Plaintiff's mortgage fraud claim in the Prior DNJ Action accordingly focused on her pleading regarding this escrow account for Sparta Township taxes, rather than her pleading of SPS's treatment of her general mortgage payments. (Civ. A. No. 20-04501, ECF No. 32 at 4.) As a result, the Court does not find the mortgage fraud pled in Counts I and VI of the Amended Complaint to be identical to the mortgage fraud pleaded in Count II of the Prior DNJ Action, nor does the Court find the mortgage fraud alleged in Counts I and VI was litigated or finally decided upon in the Prior DNJ Action. *See Brady v. Twp. of Woodbridge*, Civ. A. No. 19-17868, 2020 WL 1899777, at *3 (D.N.J. Apr. 17, 2020) (finding adjudication of whether Plaintiff violated Code of Judicial Conduct not to be an identical issue to whether Defendants maliciously prosecuted Plaintiff); *Sanofi-Aventis U.S. LLC v. Mylan GmBH*, Civ. A. No. 17-9105, 2019 WL 4861428, at *1 (D.N.J. Oct. 2, 2019) (finding issues are not identical when different legal standards would apply to the adjudication of each issue); *Yerkes v. Weiss*, Civ. A. No. 17-2493, 2022 WL 1229933, at *8 (D.N.J. Apr. 26, 2022) (finding whether Defendant misrepresented the terms of an agreement is not an identical issue to whether Plaintiff accepted and understood the agreement). For these reasons, Counts I and VI cannot be dismissed using the issue preclusion doctrine.

Accordingly, the Duane Morris Defendants' Motion to Dismiss Counts IV and V is **GRANTED** and Counts IV and V are **DISMISSED WITH PREJUDICE**.

### 2. Claim Preclusion

The Duane Morris Defendants argue Counts I, IV, V, and VI of the Amended Complaint should be dismissed based on the doctrine of claim preclusion. Since Counts IV and V of the

Amended Complaint have already been dismissed for issue preclusion, the Court will only assess whether Counts I and VI are barred by claim preclusion. The Duane Morris Defendants argue claim preclusion should apply because (1) there was a final judgment in a previous lawsuit when the Court dismissed Plaintiff's claims with prejudice in the Prior DNJ Action, and (2) the operative facts of Counts I and VI are the same as the claims Plaintiff made in the Prior DNJ Action, this being that SPS "acted wrongfully when it failed to account for payments, set up an escrow account, and held certain payments in suspense." (ECF No. 54-1 at 16–18.)

Plaintiff's argument against the application of claim preclusion is the same as her argument against the application of issue preclusion. She asserts claim preclusion should not apply to her claims, because "the causes of Action were not fully litigated []or re- litigated." (ECF No. 62 ¶ 56.) Plaintiff also challenges the dismissal of her claims in the Prior DNJ Action, arguing the dismissal was not a valid judgment as "it was not free from error." (*Id.* ¶ 1.4.) Plaintiff claims the Judge failed to consider several exhibits in the Prior DNJ Action and argues the judgment should be ignored due to error. (*Id.*)

Claim preclusion, also known as *res judicata*, applies both to claims brought in a previous lawsuit, and claims that could have been brought in a previous lawsuit. *Simoni*, 872 F. Supp. 2d at 388. The doctrine applies when there is "(1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action." *Id.* (citing *Mullarkey v. Tamboer*, 536 F.3d 215, 225 (3d Cir. 2008)). In assessing whether two causes of action are substantively similar, a court will consider whether there is an "essential similarity of the underlying events giving rise to the various legal claims." *Id.* at 390 (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259 (3d Cir. 2010)). In particular, a court will assess whether a party "(1) complains of the same acts; (2) alleges the same material facts in

each suit; and (3) requires the same witnesses and documentation to prove such allegations." *Est. of Moore v. Roman*, Civ. A. No. 18-16345, 2019 WL 4745073, at *3 (D.N.J. Sept. 27, 2019) (citing *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009)). A party raising new and discrete facts is not itself dispositive, rather, a court will still apply claim preclusion to bar the new claims if it finds the new facts arise out of the same transactions, or from connected transactions, which were raised in the previous action. *Moore*, 2019 WL 4745073 at *3 (citing *Elkadrawy*, 584 F.3d at 174).

The Court finds there was a "final judgment on the merits" in the Prior DNJ Action for purposes of claim preclusion. *See Simoni*, 872 F. Supp. 2d at 388. The Court in that case dismissed Plaintiff's claims with prejudice (Civ. A. No. 20-04501, ECF No. 32 at 3–6), and it is well settled that a dismissal with prejudice constitutes a "final judgment on the merits" for claim preclusion purposes. *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (quoting *Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992)) ("A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims."); *Grossberger v. Saldutti*, 834 F. Supp. 2d 209, 214 (D.N.J. 2011) (quoting *Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21, 23 (3d Cir. 2007)) ("A 'dismissal "with prejudice" is treated as an adjudication of the merits and thus has preclusive effect.'"); *Bank Leumi*, 331 F. Supp. 3d at 410 (quoting *Dowdell v. Univ. of Med. and Dentistry of N.J.*, 94 F. Supp. 2d 527, 533 (D.N.J. 2000)) ("A dismissal with prejudice 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial'"). Therefore, the Court finds its previous dismissal of Plaintiff's claims with prejudice in the Prior DNJ Action to be a "final judgment on the merits" for claim preclusion purposes.

The Court also finds Plaintiff has brought this action against "the same parties or their privies" with the new defendants being in sufficient privity with the original defendant SPS to assert claim preclusion. *See Simoni*, 872 F. Supp. 2d at 388 (citing *Mullarkey*, 536 F.3d at 225). Courts have routinely barred, via claim preclusion, a Plaintiff from bringing an action based on the same allegations as a previous action against new defendants. *See Pasqua*, 2017 WL 5667999 at *11 (finding "that although the Individual Defendants were not named as defendants in *Pasqua* I, they may invoke claim preclusion against Plaintiffs' Federal Claims, because there is a sufficiently 'close and significant relationship' . . . to satisfy the privity requirement"); *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) ("We note that a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action."); *Copeland v. U.S. Bank Cust PC5 Sterling Nat'l*, Civ. A. No. 20-07016, 2021 WL 2134942, at *8 (D.N.J. May 26, 2021) (finding sufficient privity between defendants in previous action and defendants in new action to invoke claim preclusion). Here, Plaintiff alleges the Duane Morris Defendants were acting together in a conspiracy. (Civ. A. No. 22-02705, ECF No. 40 ¶¶ 19–25, 40–49.) Therefore, by Plaintiff's own allegation, the Duane Morris Defendants were each acting on behalf of SPS. This allegation is sufficient to establish the privity of the new defendants with the original defendant SPS, thereby allowing all defendants to assert claim preclusion as to the new claims. *Lewis v. O'Donnell*, 674 F. App'x 234, 237 n.5 (3d Cir. 2017) (quoting *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004)) (stating privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata*" and finding defendants who acted on behalf of original defendant in mortgage dispute were in privity with original defendant); *Trudnos v. Strada*, Civ. A. No. 19-05846, 2021 WL 3856257, at *4 (finding employees and

attorney of original defendant were in privity with original defendant for claim preclusion purposes); *Mirza v. Miller*, Civ. A. No. 11–2192, 2012 WL 3201404, at *7 (finding defendant who acted on behalf of original defendant in real estate transaction to be in privity with original defendant for claim preclusion purposes).

Finally, the Court finds Counts I and VI of the Amended Complaint arise from the same cause of action as the Prior DNJ Action, as these claims are derived from the same or related transactions to the ones Plaintiff asserted in the prior case. Notably, in the Prior DNJ Action, Plaintiff asserted SPS was diverting her regular mortgage payments to an account titled "Unapplied" and harassing her with incorrect mortgage statements. (Civ. A. No. 20-04501, ECF No. 16 at 12–14.) Plaintiff alleged a "fraudulent scheme" in which SPS improperly held her mortgage payments in a "suspense" account rather than applying the payment to the mortgage balance, which resulted in SPS reporting Plaintiff's late payment to credit agencies. (*Id.* at 14.) The substance of this allegation exactly matches Plaintiff's claims in the present action, where Plaintiff again alleges that SPS received her mortgage payments and placed the payments into an account titled "Unapplied." (Civ. A. No. 22-02705, ECF No. 40 ¶¶ 21–22.) To the extent Plaintiff alleges additional facts in Counts I and VI, these facts are merely progressions of the same transaction of SPS applying her mortgage payments to an "Unapplied" account. For instance, Plaintiff notes she made a payment to SPS on December 20, 2022 for past due mortgage amounts and was subsequently forced to sell her home. (*Id.* ¶¶ 42–43.) This fact represents a development of the prior issue of Plaintiff being unable to make mortgage payments. Therefore, because both Counts I and VI are based on the same transaction Plaintiff asserted in the Prior DNJ Action, the Court finds Plaintiff should have raised these claims in the prior proceeding. Because she did not, the claims are barred under the doctrine of claim preclusion. *See Cintron v. Monterey Fin. Servs.,*

*Inc.*, Civ. A. No. 17-11538, 2019 WL 13217388, at *3 (D.N.J. Apr. 30, 2019) (finding claim preclusion barred claims focused "on Defendant's efforts to collect the same debt during the same time period" as prior claims); *Kennedy v. James B. Nutter & Co.*, Civ. A. No. 22-00140, 2023 WL 5723019, at *3 (D.N.J. Sept. 5, 2023) (finding claims arising out of same mortgage litigated in prior action are barred in future action by claim preclusion); *Fraize v. Gov't Nat'l Mortg. Assoc.*, Civ. A. No. 14-7152, 2016 WL 958392, at *9 (D.N.J. Mar. 14, 2016) (finding all claims regarding mortgage foreclosure should have been raised in prior action, and finding further claims are barred by claim preclusion doctrine).

Accordingly, the Duane Morris Defendants' Motion to Dismiss Counts I and VI is **GRANTED** and Counts I and VI are **DISMISSED WITH PREJUDICE**.[5]

### C.     Sufficiency of Pleading

The Duane Morris Defendants argue all Plaintiff's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Since Counts I, IV, V, and VI of the Amended Complaint have already been dismissed under the doctrines of issue preclusion and claim preclusion, the Court will only assess whether Counts II, III, and VII of the Amended Complaint have been sufficiently pled. The Court will address each Count in turn.

### 1.     Count II (FDCPA Claim Against Messinger)

The Duane Morris Defendants argue Count II of the Amended Complaint should be dismissed because the letter on which the Count is premised was not attempting to collect a debt, and because the letter was not addressed to a consumer, but a tenant. (ECF No. 54-1 at 21–22.) Further, the Duane Morris Defendants claim Plaintiff has failed to identify Messinger's alleged

---

[5] Plaintiff's argument that the Prior DNJ Action should be ignored due to error is inapposite for the reasons noted in footnote 4. *Supra* note 4.

violation of the FDCPA. (*Id.* at 22.) Plaintiff argues the claim has been adequately pled because the letter inaccurately referred to her as a tenant, and Messinger as her landlord. (ECF No. 62 ¶¶ 157–58.) Plaintiff argues this violates the FDCPA as it prohibits "any false, deceptive, or misleading representation or means in connection with the collection of the Debt." (*Id.* ¶ 21.)

In general,

> [t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Tobing v. Parker McCay, P.A.*, Civ. A. No. 17-00474, 2018 WL 2002799, at *11 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). The FDCPA defines a debt collector to be "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA also defines a consumer to be "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

Here, Plaintiff's pleading fails because she does not identify any provision of the FDCPA that Messinger violated. Rather, Plaintiff generally cites to 15 U.S.C. § 1692[6] by titling Count II as "Violation of 15 U.S.C. 1692 the FDCPA." (ECF No. 40 ¶ 26.) The "declaration of purpose" contained in 15 U.S.C. § 1692 does not function as a legal requirement for creditors. Therefore, Plaintiff has not identified any legal requirement of the FDCPA that Messinger violated.

---

[6] 15 U.S.C. § 1692 is entitled "Congressional findings and declaration of purpose" and contains a list of the purposes of the FDCPA such as "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State actions to protect consumers against debt collection abuses."

Nonetheless, despite Plaintiff's inartful pleading of the relevant statutory section, the Court will consider the merits of Count II due to Plaintiff's *pro se* status, which entitles her pleading to liberal construction. *Woods v. Murphy*, Civ. A. No. 22-4284, 2023 WL 2784408, at *2 (D.N.J. Mar. 31, 2023) (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("[t]he obligation to liberally construe a *pro se* litigant's pleadings is well-established."); *Walker v. Met. Tower Life Ins. Co.*, Civ. A. No. 15-240, 2016 WL 844838, at *2 (D.N.J. Mar. 4, 2016) ("In a case brought *pro se* such as this one, the Court must construe the complaint liberally in favor of the plaintiff."); *Sanchez v. Poag*, Civ. A. No. 11-3824, 2016 WL 1134536, at *2 (D.N.J. Mar. 22, 2016) (same).

Here, it appears Plaintiff is attempting to state a claim based on 15 U.S.C. § 1692e(10), which forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The Court will consider the content of Messinger's letter to Plaintiff, as Plaintiff explicitly relies on this document in her Amended Complaint (ECF No. 40 ¶¶ 25–26), *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). Plaintiff has adequately alleged Messinger was acting as a debt collector on behalf of Duane Morris, since she claims Duane Morris was attempting to collect her mortgage debt on behalf of LMAT (ECF No. 40 ¶ 28), and has also adequately alleged she was a consumer, since she alleges she was the target of debt collection efforts regarding mortgage debt she purportedly owed (*id.*).

However, Plaintiff's claim is insufficiently pled as she has failed to allege a "material" misrepresentation by Messinger. In order to state a claim under 15 U.S.C. § 1692e, a plaintiff must allege a misrepresentation which is "capable of influencing the decision of the least sophisticated debtor." *Thomas v. John A. Yonderian Jr. LLC*, 232 F.Supp.3d 656, 672 (D.N.J. 2017) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420–21 (3d Cir. 2015)); *Rapoport v. Caliber Home*

*Loans, Inc.*, 617 F.Supp.3d 241, 248–49 (D.N.J. 2022) (quoting *Jensen*, 791 F.3d at 421 (stating a misrepresentation is material if it "has the potential to affect the decision-making process of the least sophisticated debtor"); *Ozturk v. Amsher Collection Servs., Inc.*, Civ. A. No. 21-18317, 2022 WL 1602192, at *9 (D.N.J. May 20, 2022) (stating that "the debt collection letters that have been found to be materially misleading in this district drive the recipient towards a decision she would not otherwise take if not for the letter's misrepresentation or falsity"). Here, Plaintiff complains that Messinger's letter inaccurately identified her as a "tenant," when she was, in fact, a homeowner. (ECF No. 40 ¶ 25.) However, Plaintiff has not alleged how this information could have influenced her decision-making regarding the mortgage debt. Even assuming this form of address was inaccurate, the Court does not find the error was "material," as the error was merely a salutation in the letter and did not address the substance of Plaintiff's debt or obligations. (ECF No. 40-3); *See Ozturk*, 2022 WL 1602192 at *9 (stating that "the debt collection letters that have been found to be materially misleading in this district drive the recipient towards a decision she would not otherwise take if not for the letter's misrepresentation or falsity"); *Grubb v. Green Tree Servicing, LLC*, Civ. A. No. 13-07421, 2017 WL 3191521, at *12 (D.N.J. July 27, 2017) (quoting *Jensen*, 791 F.3d at 421–22) ("Although the bar for materiality is not "particularly high . . ., the materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor."); *Dixon v. Stern & Eisenberg, PC*, 652 F. App'x 128, 131 (3d Cir. June 13, 2016) (quoting *Jensen*, 791 F.3d at 421) (stating "[a] debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material").

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count II is **GRANTED** and Count II is **DISMISSED WITHOUT PREJUDICE**.

        **2.**        **Count III (Conspiracy to Commit Mortgage Fraud and Mortgage Servicing Fraud Against All Defendants)**

Based on the economic loss doctrine, the Duane Morris Defendants argue Count III should be dismissed because Plaintiff's dispute is predicated on an underlying note and mortgage. (ECF No. 54 at 24.) Alternatively, the Duane Morris Defendants argue Count III should be dismissed because Plaintiff has failed to allege a civil conspiracy due to no allegation of an unlawful act, intent to inflict injury, action in concert, or damages. (*Id.*) Plaintiff argues the economic loss doctrine does not apply as she is not bringing a breach of contract claim, and because her losses and damages do not flow from the underlying mortgage contract, but rather from the named Defendants' fraudulent actions. (ECF No. 62 ¶¶ 70–71.)

"Under New Jersey law, the economic loss doctrine bars plaintiffs from 'recovering in tort economic losses to which their entitlement only flows from contract.'" *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 462 (D.N.J. 2020) (quoting *Chen v. HD Dimension Corp.*, Civ A. No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010)). In New Jersey, "the economic loss doctrine helps to maintain the 'critical' 'distinctions between tort and contract actions.'" *SRC Constr. Corp. of Monroe v. Atlantic City Hous. Auth.*, 935 F. Supp. 2d 796, 798 (D.N.J. 2013) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 276 (N.J. 2002)). Therefore, "the economic loss doctrine operates to bar tort claims where a plaintiff 'simply [seeks] to enhance the benefit of the bargain she contracted for.'" *SRC*, 935 F. Supp. 2d at 798 (quoting *Saltiel*, 788 A.2d at 280).

Plaintiff's claim against the Duane Morris Defendants in Count III is not barred by the economic loss doctrine, because Plaintiff was not in a direct contractual relationship with any of the named Defendants. The economic loss doctrine only bars "certain tort claims between parties to a contract." *SRC*, 935 F. Supp. 2d at 799. Therefore, "the absence of a contract between a

plaintiff and defendant in a [] suit precludes the application of the economic loss doctrine." *Id.*; *see also Reddy v. Patel*, Civ. A. No. 16-08256, 2023 WL 2770477, at *4 (D.N.J. Apr. 4, 2023); *MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*, Civ. A. No. 20-7336, 2021 WL 1168962, at *4 (D.N.J. Mar. 26, 2021). Here, there is no contract between Plaintiff and the Duane Morris Defendants. Rather, the Duane Morris Defendants were providing a service to the holder of Plaintiff's mortgage, LMAT. (ECF No. 40-1.) The contract in this case was therefore between Plaintiff and LMAT. Because the Duane Morris Defendants were not party to the contract between Plaintiff and LMAT, they cannot invoke the economic loss doctrine.

In Count III, Plaintiff has alleged both fraud and civil conspiracy, meaning her pleading must conform to the requirements for these claims. (ECF No. 40 ¶ 27.) To adequately state a claim for fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Schiano v. MBNA*, Civ. A. No. 5-1171, 2016 WL 4009821, at *3 (D.N.J. July 25, 2016) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Federal Rule of Civil Procedure 9(b) also imposes a heightened pleading standard for fraud-based claims, requiring that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Powell v. Subaru of Am.*, 502 F. Supp. 3d 856, 887 (D.N.J. 2020). The heightened standard functions independently of, and in addition to, Federal Rule of Civil Procedure 12(b)(6). *Id.* (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004)). "Rule 9(b) does not 'requir[e] every material detail of the fraud, such as date, location, and time' but 'plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Powell*, 502 F. Supp. 3d at 887 (quoting *In re Rockefeller Ctr. Props., Inc.*

*Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Ultimately, the heightened pleading standard is designed to ensure "notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 497 (D.N.J. 2014) (quoting *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998)).

Plaintiff also alleges a conspiracy in Count III. (ECF No. 40 ¶ 27.) To properly plead a conspiracy claim under New Jersey law, a plaintiff must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Fed. Nat'l Mortg. Ass'n v. DuBois*, Civ. A. No. 15-3787, 2018 WL 5617566, at *13 (D.N.J. Oct. 30, 2018) (quoting *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016)).

Here, the Court finds Plaintiff merely offers conclusory statements regarding the existence of the conspiracy, by stating: "Defendants #2, #3, #4 and #5 are lawyers who knowingly and willingly joined a conspiracy to defraud the Plaintiff and her husband" (ECF No. 40 ¶ 12); and "Defendants all joined the conspiracy of the Goldman Sachs Organized Crime and attacked the Plaintiff and her husband" (*id.* ¶ 18). Plaintiff does not provide any detail of the circumstances or content of any agreement between the Defendants. Plaintiff's failure to specifically allege "a real agreement or confederation with a common design" warrants dismissal of her claim. *Fed. Nat'l Mortg. Ass'n*, 2018 WL 5617566, at *13; *see also Cagno v. Ivery*, Civ. A. No. 19-20384, 2023 WL 6212023, at *6–7 (D.N.J. Sept. 25, 2023) (finding claims of shared customs or policies among defendants did not sufficiently allege an agreement between the defendants); *Iwanicki v. Bay State Mill Co.*, Civ. A. No. 11–01792, 2011 WL 6131956, at *8 (D.N.J. Dec. 7, 2011) (dismissing civil

28

conspiracy claim because Plaintiff did not allege "any facts suggesting that one or more of the Defendants entered into an agreement to commit an unlawful act or engaged in any discussions that could be construed as an agreement").

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count III of the Amended Complaint is **GRANTED** and Count III of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

### 3.      Count VII (Home Foreclosure Fraud and Perjury Against Messinger)

The Duane Morris Defendants argue Count VII should be dismissed because Messinger was not obligated to list related cases in other state's courts or federal courts on the FCIS. (ECF No. 54-1 at 28–29.) The Duane Morris Defendants also argue Plaintiff may not bring a private cause of action for "perjury" under New Jersey law. (*Id.* at 29.) Plaintiff claims she has adequately alleged fraud against Messinger, because he intentionally omitted the related federal lawsuits from the FCIS, thereby willfully misrepresenting a past or present fact. (ECF No. 62 ¶¶ 159–60.) Additionally, Plaintiff argues Messinger's fraudulent intent is evidenced by his initial withdrawal of the FCIS via stipulation. (*Id.* ¶ 30.)

As to Plaintiff's claim of perjury against Messinger, the Court notes it is well established "[t]here is no private right of action under either the federal or the New Jersey perjury statutes." *Taylor v. Jackson*, Civ. A. No. 19-16815, 2019 WL 5569070, at *3 (quoting *Ali v. Person*, 904 F. Supp. 375, 377 n.1 (D.N.J. 1995)). Therefore, Plaintiff cannot bring a private claim of perjury.

The Court also finds Plaintiff has not adequately stated a claim for fraud against Messinger because Plaintiff has failed to plead the third, fourth, and fifth elements of a fraud claim. Plaintiff has failed to allege she relied on Messinger's assertion in the FCIS that there were no related pending cases to the Foreclosure Action. Further, Plaintiff has not alleged that this particular action

caused her any damages as a result of her reliance on Messinger's representation. Therefore, because Plaintiff has not alleged reliance on, or damages from, Messinger's representation, her fraud claim under Count VII is insufficiently pled. *See Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 366–67 (D.N.J. 2006) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261 (N.J. 2005) ("Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them."); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, Civ. A. No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (finding general allegations of plaintiff's confusion and inability to evaluate options to be insufficient to plead reliance under common-law fraud).

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count VII of the Amended Complaint is **GRANTED** and Count VII of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

### D.    Leave to Amend

The Duane Morris Defendants argue Plaintiff should be denied leave to further amend the Complaint, as she has unduly delayed service, and repeatedly failed to cure deficiencies via amendments to her complaints, both in this action and in her previous action before the Court. (ECF No. 54-1 at 29–31.) Generally speaking, leave to amend should be freely given by courts, unless there is an apparent reason to deny leave, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Kounelis v. Sherrer*, 396 F. Supp. 2d 525, 529 (D.N.J. 2005).

The Court grants Plaintiff leave to amend the Complaint on Counts II, III, and VII (the "non-precluded counts"), because it would not be futile for Plaintiff to attempt to correct the

identified deficiencies for the non-precluded counts, and there is no apparent equitable reason to deny leave to amend. Although Plaintiff was delayed in serving SPS in this matter, this is not grounds to deny Plaintiff leave to amend, particularly because the Court must consider Plaintiff's *pro se* status when assessing her delay in service. *See Washington v. Ellis*, Civ. A. No. 17-7243, 2021 WL 2982175, at *2 (D.N.J. July 15, 2021) (quoting *Okorie v. Salem Cnty. Corr. Facility*, Civ. A. No. 12-1230, 2012 WL 4611155, at *2 (D.N.J. Oct. 2, 2012)) (considering Plaintiff's *pro se* status when reviewing procedural delay in case, as "a *pro se* plaintiff is 'entitled to a certain degree of leniency so as to ensure that her case is decided on its merits rather than a procedural technicality'"); *Parikh v. United Parcel Serv.*, Civ. A. No. 09-1652, 2012 WL 1134912, at *2 (stating that, when assessing delay, a court should "remain[] mindful of how Plaintiff's *pro se* status affects his prosecution of []his case"). The Court also does not agree with the Duane Morris Defendants' assertion that Plaintiff has repeatedly failed to cure deficiencies in pleading the non-precluded counts, because only one Amended Complaint has been filed in this matter; and the Duane Morris Defendants acknowledge the non-precluded counts are new to this litigation. (ECF No. 54-1 at 10–11.) Moreover, the Federal Rules of Civil Procedure generally require the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15. The Court will therefore permit Plaintiff to amend the Complaint on the non-precluded counts in the interest of justice, since doing so will ensure Plaintiff has a fair opportunity to state her new claims.

## IV.    CONCLUSION

For the reasons set forth above, the Duane Morris Defendants' Motion to Dismiss (ECF No. 54) Plaintiff's Amended Complaint (ECF No. 40) is **GRANTED**. Counts I, IV, V, and VI of Plaintiff's Amended Complaint (ECF No. 40) are **DISMISSED WITH PREJUDICE** without leave to amend, and Counts II, III, and VII of Plaintiff's Amended Complaint (ECF No. 40) are **DISMISSED WITHOUT PREJUDICE** with leave to amend.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 31, 2024