<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHERRY SCALERCIO-ISENBERG,<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC., *et al.*,<br><br>Defendants. | Case No. 2:22-cv-02705 (BRM) (AME)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendants Select Portfolio Servicing, Inc. ("SPS"), Brett L. Messinger ("Messinger"), and Kassia Fialkoff's ("Fialkoff") (together, the "Duane Morris Defendants") Motion to Dismiss (ECF No. 81), as well as Defendants Mitchell Scott Kurtz ("Kurtz") and Robert D. Bailey's ("Bailey") (together, the "Parker Ibrahim Defendants") Motion to Dismiss (ECF No. 82) *pro se* Plaintiff Sherry Scalercio-Isenberg's ("Plaintiff") Second Amended Complaint (ECF No. 78) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on April 1, 2024. (ECF No. 83.) On April 8, 2024, the Parker Ibrahim Defendants filed a reply. (ECF No. 84.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Duane Morris Defendants' Motion to Dismiss (ECF No. 81) is **GRANTED** and the Parker Ibrahim Defendants' Motion to Dismiss (ECF No. 82) is **GRANTED**. Plaintiff's Second Amended Complaint (ECF No. 78) is **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

### A.    Factual Background

For the purpose of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises from a home foreclosure due to an unpaid mortgage. Plaintiff attempted to make mortgage payments to SPS, but these payments were placed in an SPS account titled "Unapplied." (ECF No. 78 at 7.) As a result, the money was never applied to the outstanding mortgage balance, meaning the account balance increased and the non-payment was reported to credit agencies, resulting in negative assessments against Plaintiff's credit rating. (*Id.*)

In June 2022, Plaintiff received a debt collection notice from Duane Morris, LLP ("Duane Morris") and immediately attempted to contact Duane Morris to indicate she disputed the outstanding amounts listed in the notice. (*Id.* at 6, 8.) Plaintiff spoke with Fialkoff, who noted her dispute and, in response to a question from Plaintiff, stated she had not filed a notice of appearance on behalf of the Goldman Sachs entity Legacy Mortgage Asset Trust ("LMAT") in any court. (*Id.* at 8.) Plaintiff filed her initial complaint for this action in the Southern District of New York ("SDNY") on April 19, 2022. (ECF No. 1.) Plaintiff then sent a letter dated June 17, 2022, containing details of this civil action to the Philadelphia office of Duane Morris. (ECF No. 78 at 9.) Plaintiff states that various lawyers engaged in a coordinated campaign of harassment in response to her disputing the outstanding mortgage debt. (*Id.* at 7.)

On July 29, 2022, a Foreclosure Action was filed against the property subject to the mortgage. (*Id.* at 11, 39.) Messinger, in completing the New Jersey Chancery Division Foreclosure Case Information Statement ("FCIS"), did not include the federal lawsuits filed by Plaintiff disputing the debt. (*Id.* at 39.)

On or about December 20, 2022, Plaintiff and her husband, Marcus Isenberg ("Isenberg"), made a payment of $100,000 to SPS via their lawyer, Mr. William Askin ("Askin"). (ECF No. 40 ¶ 42.)[1] Askin issued a check for the total amount demanded in the mortgage loan pay-off statement. (*Id.*) Plaintiff and Isenberg then proceeded to sell the home subject to the mortgage. (*Id.* ¶ 43.)

### B.    Procedural History

Plaintiff filed her initial Complaint in the SDNY on April 19, 2022. (ECF No. 1.) On May 2, 2022, Judge Laura Taylor Swain ordered the case transferred from the SDNY to the District of New Jersey ("DNJ") on the basis that the events detailed in the Complaint, including the debt collection against Plaintiff and alleged harassment of Plaintiff, occurred in New Jersey. (ECF No. 5 at 3–5.)

On June 28, 2022, Plaintiff moved for default judgment against SPS. (ECF No. 18.) On July 6, 2022, the Parker Ibrahim Defendants filed a Motion to Dismiss the Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF Nos. 21, 21-1.) On August 1, 2022, Plaintiff moved for default judgment against Defendant Credit Suisse Group ("Credit Suisse"). (ECF No. 25.) On August 19, 2022, SPS filed a Motion to Dismiss the Complaint for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m). (ECF

---

[1] In the Second Amended Complaint, Plaintiff states she incurred over $160,000 of damages "directly related to the Loan payoff amount." (ECF No. 78 at 42.)

Nos. 27, 27-1.) The Court issued an opinion on February 28, 2023, denying Plaintiff's Motions for Default Judgment against SPS and Credit Suisse, denying SPS's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 4(m), and granting the Parker Ibrahim Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 35.) The Court dismissed Plaintiff's claims against the Parker Ibrahim Defendants without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.*)

Plaintiff filed an amended complaint on March 8, 2023. (ECF No. 40.) The Amended Complaint[2] alleged the following causes of action: (1) violation of the Racketeer Influenced and Corrupt Organization ("RICO") statute by all Defendants (Count I); (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 18 U.S.C. § 1692, by Messinger (Count II); (3) Conspiracy to Commit Mortgage Fraud and Mortgage Servicing Fraud by all Defendants (Count III); (4) violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, 1683, by all Defendants (Count IV); (5) violation of the FDCPA, 18 U.S.C. § 1692(g), by all Defendants (Count V); (6) Mortgage Fraud by all Defendants (Count VI); and (7) Home Foreclosure Fraud and Perjury by Messinger (Count VII).

The Parker Ibrahim Defendants filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 22, 2023. (ECF No. 45.) The Duane Morris Defendants filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 17, 2023. (ECF No. 54.) Plaintiff filed an opposition to the Duane Morris Defendants' Motion to Dismiss on June 13, 2023. (ECF No. 62.) The Duane Morris Defendants filed a reply on June 21, 2023. (ECF No. 63.) The Court issued an opinion and

---

[2] Plaintiff named the same defendants in her First Amended Complaint as she did in her initial Complaint in addition to Messinger and Fialkoff. (ECF Nos. 1, 40.)

order on January 31, 2024, granting the Duane Morris Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 54.) The Court dismissed Plaintiff's claims against the Duane Morris Defendants with prejudice for claim preclusion as to Counts I and VI, with prejudice for issue preclusion as to Counts IV and V, and without prejudice with leave to amend for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to Counts II, III, and VII. (ECF No. 71.) Subsequently, the Court issued an opinion on February 16, 2024, granting the Parker Ibrahim Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45.) The Court dismissed Plaintiff's claims against the Parker Ibrahim Defendants without prejudice with leave to amend. (ECF No. 76.)

Plaintiff filed a Second Amended Complaint on February 20, 2024. (ECF No. 78.) The Second Amended Complaint[3] alleged the following causes of action: (1) violation of the FDCPA, 18 U.S.C. § 1692, by Fialkoff (Count I); (2) violation of the FDCPA, 18 U.S.C. § 1692, by SPS (Count II); (3) violation of the FDCPA, 18 U.S.C. § 1692, by Messinger (Count III); (4) violation of the FDCPA and Conspiracy to Commit Mortgage Servicing Fraud and Mortgage Fraud by the Parker Ibrahim Defendants (Count IV); (5) Home Foreclosure Fraud and Perjury by Messinger (Count V); and (6) Mortgage Servicing Fraud by Messinger and SPS (Count VI). On March 19, 2024, the Duane Morris Defendants and the Parker Ibrahim Defendants both filed Motions to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 81, 82.) On April 1, 2024, Plaintiff filed an opposition to both motions to

---

[3] Plaintiff notes in the Second Amended Complaint this Court's footnote in the January 31, 2024, Opinion and Order (ECF Nos. 71, 72) that the Parker Ibrahim Defendants did not participate in the Duane Morris Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 54). The Parker Ibrahim Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 45) was addressed by this Court in the February 16, 2024, Opinion and Order (ECF Nos. 76, 77).

dismiss.[4] (ECF No. 83.) On April 8, 2024, the Parker Ibrahim Defendants filed a reply. (ECF No. 84.)

### C.   Related Cases

#### 1.   Prior DNJ Action

Plaintiff filed a previous case against SPS in the DNJ on April 20, 2020 (the "Prior DNJ Action"). (Civ. A. No. 20-04501, ECF No. 1.) The complaint alleged five causes of action: (1) violation of the FCRA, 15 U.S.C. § 1681 (Count I); (2) Mortgage Fraud under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-19 (Count II); (3) violation of the FDCPA, 15 U.S.C. § 1692 (Count III); (4) Extortion (Count IV); and (5) Money Laundering (Count V). (*Id.*) SPS filed a motion to dismiss the original complaint on May 28, 2020. (*Id.*, ECF No. 7.) The Honorable Anne E. Thompson, U.S.D.J. ("Judge Thompson") granted the motion and dismissed the complaint without prejudice on September 30, 2020. (*Id.*, ECF No. 13.)

Plaintiff filed an amended complaint on October 6, 2020. (*Id.*, ECF No. 16.) SPS filed a motion to dismiss the amended complaint on October 23, 2020. (*Id.*, ECF No. 19.) Judge Thompson granted the motion and dismissed the amended complaint with prejudice on January 27, 2021. (*Id.*, ECF No. 32.) Judge Thompson dismissed the claims on the following grounds: (1) Count I because SPS was not put on notice of the credit report dispute by a credit reporting agency; (2) Count II because SPS did not engage in sale or advertisement of merchandise or real estate; (3) Count III because SPS does not qualify as a "debt collector"; and (4) Counts IV and V because

---

[4] The Court notes Plaintiff submitted two items following her Opposition: (1) an exhibit being offered as further "corroborating evidence" (ECF No. 85) and (2) a document filed as a Text of Proposed Order (ECF No. 86), but which purports to correct this Court's February 16, 2024, Opinion (ECF No. 76) as well as give a Proposed Order for the Second Amended Complaint (ECF No. 78).

New Jersey does not recognize civil extortion and money laundering actions. (*Id.*, ECF No. 32 at 3–5.)

### 2.      The Foreclosure Action

On July 29, 2022, LMAT filed a Foreclosure Action against Plaintiff, Marcus Isenberg, and Charter One (the "Foreclosure Action") in the Superior Court of New Jersey, Chancery Division, Sussex County ("Superior Court"). (Case No. SWC-F-007893-22, Trans ID. CHC2022176074.) Plaintiff filed an answer, claiming Messinger failed to include related cases to the foreclosure in the FCIS, and LMAT was a participant in a mortgage fraud scheme against Plaintiff. (*Id.*, Trans ID. CHC2022271214.) The Superior Court found the answer to be non-contesting and transferred the case to the Office of Foreclosure. (*Id.*, Trans. ID. CHC2022283434.) On December 29, 2022, LMAT voluntarily dismissed the Foreclosure Action without prejudice. (*Id.*, Trans. ID. CHC2022310631.)

## II.   Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead,

assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must

now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.    DECISION

#### A.    *Issue Preclusion*

The Duane Morris Defendants argue both types of *res judicata*—issue preclusion and claim preclusion—should be applied to dismiss Count II of the Second Amendment Complaint since this claim was found to be barred in this Court's prior decision without leave to amend. (ECF No. 81 at 17 (citing ECF No. 71 at 21–22)). The Court need only consider issue preclusion as this will resolve multiple Counts, including Count II. Moreover, as this Court has previously done, it will consider the Prior DNJ Action for purposes of the issue preclusion as well as its own opinion.[5]

---

[5] *See* ECF No. 71 at 11–17 for the previous discussion of issue preclusion for Counts raised in the First Amended Complaint.

The Duane Morris Defendants argue issue preclusion applies to Count II because, although Plaintiff's claim is being presented differently here, it is based upon the same operative facts that were already fully litigated in the Prior DNJ Action and dismissed with prejudice in this Court's prior opinion. (ECF No. 71 at 21–22.) Plaintiff argues issue preclusion should not apply to her claims because "Judge Martinotti already ruled and allowed for corrections to be made in the Second Amended Complaint." (ECF No. 83 at 14.)  Plaintiff further states, "Corrections were made as advised in the Orders." (*Id.*)

Issue preclusion, also known as collateral estoppel, is a doctrine which bars parties from re-litigating an issue determined by a "final and valid" judgment in any future lawsuit. *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010). Courts assess five factors to determine if issue preclusion bars a claim in a new litigation:

> (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated; (3) there was a final judgment on the merits; (4) the determination was essential to the earlier judgment; and (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225–26 (D.N.J. 2015). When determining whether an issue is identical between litigations, the issues must be "in substance the same." *Pasqua v. Cnty. of Hunterdon*, Civ. A. No. 15-3501, 2017 WL 5667999, at *15 (D.N.J. Nov. 27, 2017). In assessing similarity, courts consider "whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *Strassman v. Essential Images*, Civ. A. No. 17-4227, 2018 WL 1251636, at *5–6 (D.N.J. Mar. 12, 2018) (quoting First *Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007)).

10

For the same reasoning as this Court's previous opinion, Count II of Plaintiff's Second Amended Complaint is dismissed for issue preclusion as the allegation is still barred by the adjudication of the Prior DNJ Action. (ECF No. 71 at 13–16.)

In addition, Count I of Plaintiff's Second Amended Complaint, to the extent it alleges a violation of 15 U.S.C. § 1692(g) by Fialkoff, is dismissed for issue preclusion as such is similarly barred by the adjudication of the Prior DNJ Action. (*Id.*)

Accordingly, the Duane Morris Defendants' Motion to Dismiss Counts I and II is **GRANTED**.

### B.    Sufficiency of Pleading

The Duane Morris Defendants and Parker Ibrahim Defendants argue all of Plaintiff's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Although Count I of the Second Amended Complaint has already been dismissed based on issue preclusion, *see supra* Section III.A., the Court will still address it given Plaintiff's *pro se* status, and will address each Count (other than Count II) in turn.

### 1.    Count I (FDCPA Claim Against Fialkoff)

The Duane Morris Defendants argue Count I should be dismissed because the violation is barred by the statute of limitations and does not relate back under Rule 15 of the Federal Rules of Civil Procedure, and because it fails to plead a *prima facie* case under the FDCPA. (ECF No. 81 at 12.) Plaintiff argues the violation is not time-barred by the one-year statute of limitations because the First Amended Complaint was filed within the one-year limitation, and that her claim has been adequately pled because she detailed the misleading promise made by Fialkoff. (ECF No. 78 at 8–16, 83 at 12–14.) Plaintiff further states Fialkoff's promise was a material misrepresentation that was relied upon, and she sufficiently stated a claim under the FDCPA because "[a]ll three elements

of the FDCPA law have been met." (ECF No. 78 at 5, 8.) The Duane Morris Defendants argue in the alternative that Count I of the Second Amended Complaint should be dismissed because the phone conversation and promise on which the Count is premised was not an attempt to collect a debt. (ECF No. 81 at 13–16).

In general,

> [t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Tobing v. Parker McCay, P.A.*, Civ. A. No. 17-00474, 2018 WL 2002799, at *11 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). The FDCPA defines a debt collector to be "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA also defines a consumer to be "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

### a.  Statute of Limitations and Relation Back

A private action under the FDCPA must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The date of the violation starts the running of the statute of limitations. *Rotkiske v. Klemm*, 589 U.S. at 8, 13 (2019).

Rule 15(c) of the Federal Rules of Civil Procedure allows for an amendment to a pleading to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Application of Rule 15(c)(1)(B) normally entails a

"search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.2004). Additionally, when an amended pleading changes a party, "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

The Duane Morris Defendants argue that, because Fialkoff was not named in the Original Complaint, the Second Amended Complaint cannot relate back. (ECF No. 81 at 13.) However, this Court finds the conduct now being alleged against Fialkoff does relate back, and the statute of limitations does not bar the claim. In the Original Complaint, Plaintiff details making numerous phone calls to SPS with regards to her dispute of the debt and claims of mortgage fraud. (ECF No. 1 at 10, 17.) In the Second Amended Complaint, Plaintiff states she relied on "the information from Ms. Fialkoff, believing the corrections [she] demanded for all the disputed items, identified in the Debt Collector Notice, would be corrected immediately by SPS and Legacy Mortgage Asset Trust." (ECF No. 78 at 9.) Accordingly, this connection is enough for the claim now being brought to relate back, and, given the First Amended Complaint, Fialkoff reasonably can be said to have known or should have known that such a claim could be brought against her. *See, e.g., Krupski*, 560 at 541; *see also Reeves v. Cnty. of Bergen*, Civ. A. No. 18-14061 2023 WL 8520742 (D.N.J. Dec. 8, 2023) (relation back allowed because plaintiff's initial complaint was filed *pro se* and nothing in the record indicated he knew or should have known the identity of defendant when New Jersey discovery rule to toll statute of limitations was applied).

**b.  Sufficiency of Pleading**

Plaintiff's pleading fails because she does not identify a specific provision of the FDCPA Fialkoff is alleged to have violated. This deficiency is the same one that plagued Plaintiff's First

Amended Complaint. [6] (*See* ECF No. 71 at 23.) Rather, Plaintiff generally cites to 15 U.S.C. § 1692[7] by titling Count I as "Kassia Falkoff, esq., Violated the FDCPA 15 U.S.C. 1692." (ECF No. 78 at 8.) Violations of statutes mentioned in "passing," or merely referenced in the complaint without factual support, are not sufficient to raise a claim. *Alexis v. Sessions*, Civ. A. No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018). Moreover, it is "not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (citing *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.,* 515 F.3d 718, 721 (7th Cir. 2008)). Indeed, the "declaration of purpose" contained in 15 U.S.C. § 1692 does not function as a legal requirement for creditors. Therefore, Plaintiff has not identified a specific provision of the FDCPA that Fialkoff allegedly violated.

Nonetheless, despite Plaintiff's inartful pleading of the relevant statutory section, the Court will consider the merits of Count II due to Plaintiff's *pro se* status, which entitles her pleading to liberal construction. *Woods v. Murphy*, Civ. A. No. 22-4284, 2023 WL 2784408, at *2 (D.N.J. Mar. 31, 2023) (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."); *Walker v. Met. Tower Life Ins. Co.*, Civ. A. No. 15-240, 2016 WL 844838, at *2 (D.N.J. Mar. 4, 2016) ("In a case brought *pro se* such as this one, the Court must construe the complaint liberally in favor of the

---

[6] In this Court's prior opinion, it was Count II against Messinger where Plaintiff did not identify a provision of the FDCPA that had been violated.

[7] Section 1692 of U.S.C. Title 15 is titled "Congressional findings and declaration of purpose" and contains a list of the purposes of the FDCPA, such as "to eliminate abusive debt collection practices by debt collectors, to insure [sic] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State actions to protect consumers against debt collection abuses."

plaintiff."); *Sanchez v. Poag*, Civ. A. No. 11-3824, 2016 WL 1134536, at *2 (D.N.J. Mar. 22, 2016) (same).

Here, it appears Plaintiff is attempting to state a claim based on 15 U.S.C. § 1692e(10), which forbids the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff has adequately alleged Fialkoff was a debt collector given Duane Morris's status as a debt collector,[8] since she claims Duane Morris was attempting to collect her mortgage debt on behalf of LMAT, and has also adequately alleged she was a consumer, since she alleges she was the target of debt collection efforts regarding mortgage debt she purportedly owed. (ECF No. 78 at 3–6.)

However, Plaintiff fails to allege an attempt to collect a debt by Fialkoff. Plaintiff states Fialkoff violated the FDCPA during a phone conversation with the Plaintiff and that Fialkoff provided "false, deceptive and misleading information and material misrepresentation of critical, material information in connection with the collection of the alleged debt." (*Id.* at 8.) Plaintiff goes on to detail her reliance on the promise Fialkoff allegedly made regarding corrections to disputed items, yet Plaintiff has not demonstrated what action Fialkoff took in order to collect on the debt. (*Id.* at 8–13.) Indeed, the Plaintiff herself made this call to the Defendant to refute debt amounts and, beyond an unfounded conclusory allegation of conspiracy between Fialkoff and Messinger, she has not alleged Fialkoff did anything except purportedly lie on the phone. (*Id.*)

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count I is **GRANTED** based on issue preclusion and for failure to sufficiently plead a violation by Fialkoff.

---

[8] ECF No. 40, Exhibit 1 shows Duane Morris calling themselves a debt collector.

### 2.    Count III (FDCPA Claim Against Messinger)

The Duane Morris Defendants argue Count III should be dismissed because Plaintiff has once again failed to allege a material misrepresentation by Messinger. (ECF No. 81 at 24). Plaintiff claims she adequately alleged fraud against Messinger, relying on the certified mail envelope and letter addressing the Plaintiff as "Tenant." (ECF No. 78 at 22–23.)

For the same reasons as in this Court's previous opinion,[9] Count III is deficient. In the Second Amended Complaint, Plaintiff fails to provide any new information beyond what was alleged in the First Amended Complaint. Just as before, Plaintiff relies on the letter sent by Messinger, which addresses her as "Tenant," in asserting her cause of action. (ECF No. 78 at 22–23.) Although she provides more details regarding the letter and the damages she claims to have incurred due to the alleged reliance, she still fails to demonstrate how being called a "Tenant" is a material misrepresentation she reasonably relied upon in relation to her decision making regarding the mortgage debt.

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count III is **GRANTED.**

### 3.    Count IV (FDCPA Claim and Conspiracy to Commit Mortgage Servicing Fraud and Mortgage Fraud Against Parker Ibrahim Defendants)

#### a.   FDCPA Claim

The Parker Ibrahim Defendants argue Count IV's alleged FDCPA violation should be dismissed because: (1) Plaintiff has again failed to adequately state they are debt collectors under the FDCPA; (2) there is no claim the mortgage loan was in default when SPS became the mortgage

---

[9] This Court's previous opinion provides a thorough analysis as to why the FDCPA Claim against Messinger (Count II of the First Amended Complaint) was dismissed without prejudice and with leave to amend. (ECF No. 71 at 22–25). In short, Plaintiff failed to identify any provision of the FDCPA Messinger had violated, and, to the extent Plaintiff was attempting to state a claim based on 15 U.S.C. § 1692e(10), she failed to allege a material misrepresentation that could have influenced her decision-making regarding the mortgage debt. (*Id.*)

servicer; (3) there is no specific provision of the FDCPA in the cause of action; and (4) the claim is time-barred by the one-year statute of limitations. (ECF No. 82 at 14–16.) Plaintiff's position is her pleadings in the Second Amended Complaint are "clear, logical, well-organized, comprehensive, and include material facts and exhibits proving beyond a reasonable doubt the Defendants . . . violated the FDCPA." (ECF No. 83 at 16.)

For the same reasons as this Court's previous opinion,[10] Count IV is deficient as to the FDCPA claim. In the Second Amended Complaint, Plaintiff has not provided any new information beyond what was alleged in the First Amended Complaint. Instead, Plaintiff continues to state the same conclusions as before. Indeed, Plaintiff has not corrected any of the deficiencies the prior opinion detailed regarding whether the Parker Ibrahim Defendants are debt collectors and were engaged in any action related to the mortgage debt, nor has she clarified whether the mortgage loan was in default when SPS became the mortgage servicer. Rather, she created a new insufficiency in her Second Amended Complaint by removing the reference to a specific provision of the FDCPA from her cause of action.

As such, the Parker Ibrahim Defendants' Motion to Dismiss the FDCPA claim in Count IV is **GRANTED**.

### b. Conspiracy to Commit Mortgage Servicing Fraud and Mortgage Fraud

The Parker Ibrahim Defendants argue Count IV's claim of Conspiracy to Commit Mortgage Servicing Fraud and Mortgage Fraud should be dismissed because Plaintiff failed to

---

[10] This Court's previous opinion provides a thorough analysis as to why the FDCPA Claim against the Parker Ibrahim Defendants (Count V of the First Amended Complaint) was dismissed without prejudice and with leave to amend. (ECF No. 76 at 18–19). In sum, Plaintiff failed to allege the Parker Ibrahim Defendants were debt collectors under the statute and did not allege they were regularly engaged in debt collection or even that they were engaged in any litigation against her to collect the mortgage debt. (*Id.* at 19.)

plead the required elements of common law fraud in New Jersey when relying on the August 25, 2020 email. (ECF No. 82 at 21.) Specifically, the Parker Ibrahim Defendants state again that Plaintiff has not attributed any statement or material misrepresentation to them under this Count. (*Id.*) Likewise, the Parker Ibrahim Defendants also contend Plaintiff's reliance upon the August 17, 2021 conversation with SPS is deficient. (*Id.* at 23–26.) Plaintiff argues the Parker Ibrahim Defendants "acted in concert and crafted a false email with a threat . . . in connection with the collection of the alleged mortgage loan debt." (ECF No. 78 at 28–29.) Plaintiff also states the Parker Ibrahim Defendants conspired to commit mortgage fraud as they gave instructions for her mortgage payments to be placed in an SPS suspense account entitled "Unapplied." (*Id.* at 31–34.) She emphasizes in her opposition that she adequately provided the "who, what, when, where and how" of the heightened pleading standard for a fraud claim in the Second Amended Complaint. (ECF No. 83 at 16.)

To the extent Plaintiff has alleged both fraud and civil conspiracy, her pleading must conform to the requirements for these claims. To adequately state a claim for fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Schiano v. MBNA*, Civ. A. No. 5-1171, 2016 WL 4009821, at *3 (D.N.J. July 25, 2016) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Federal Rule of Civil Procedure 9(b) also imposes a heightened pleading standard for fraud-based claims, requiring that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Powell v. Subaru of Am.*, 502 F. Supp. 3d 856, 887 (D.N.J. 2020). The heightened standard functions independently of, and in addition to, Federal Rule of Civil Procedure 12(b)(6). *Id.* (quoting *Cal.*

*Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004)). "Rule 9(b) does not 'requir[e] every material detail of the fraud, such as date, location, and time' but 'plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Powell*, 502 F. Supp. 3d at 887 (quoting *Rockefeller*, 311 F.3d at 216). Ultimately, the heightened pleading standard is designed to ensure "notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 497 (D.N.J. 2014) (quoting *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998)).

To properly plead a conspiracy claim under New Jersey law, a plaintiff must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Fed. Nat'l Mortg. Ass'n v. DuBois,* Civ. A. No. 15-3787, 2018 WL 5617566, at *13 (D.N.J. Oct. 30, 2018) (*quoting MaxLite, Inc. v. ATG Elecs.*, Inc., 193 F. Supp. 3d 371, 390 (D.N.J. 2016)).

Here, the Court again finds Plaintiff offers conclusory statements regarding the existence of the conspiracy, such as: "[T]his is a point in time where all the lawyers conspire to more severely harass and torment the plaintiff" (ECF No. 78 at 7); "They conspired together and acted in concert using materially False information and material misrepresentations in connection with the collection of Plaintiff's alleged mortgage loan debt" (*id.* at 30); "Defendants Mitchell Scott Kurtz and Robert D. Bailey acted in concert together conspiring to intimidate, harass, torment and defraud the Plaintiff in a fraudulent scheme they created in order to defraud the Plaintiff and coerce her to drop the federal lawsuit against Select Portfolio Servicing" (*id.* at 31); and "Kurtz and Bailey conspired together with an agreement designed to defraud the Plaintiff by putting illegal

instructions on the Plaintiff's mortgage account for SPS and its representatives to divert the Plaintiff's monthly payments to a suspense type account labeled 'UNAPPLIED' on the Mortgage statement" (*id.* at 34).

Plaintiff does not provide sufficient detail of the circumstances or content of any agreement between the Defendants. Plaintiff's failure to specifically allege "a real agreement or confederation with a common design" warrants dismissal of her claim. *Fed. Nat'l Mortg. Ass'n*, 2018 WL 5617566, at *13; *see also Cagno v. Ivery*, Civ. A. No. 19-20384, 2023 WL 6212023, at *6–7 (D.N.J. Sept. 25, 2023) (finding claims of shared customs or policies among defendants did not sufficiently allege an agreement between the defendants); *Iwanicki v. Bay State Mill Co.*, Civ. A. No. 11–01792, 2011 WL 6131956, at *8 (D.N.J. Dec. 7, 2011) (dismissing civil conspiracy claim because Plaintiff did not allege "any facts suggesting that one or more of the Defendants entered into an agreement to commit an unlawful act or engaged in any discussions that could be construed as an agreement"). Plaintiff attempts to provide more context to her conclusions regarding the alleged conspiracy in this Second Amended Complaint by giving details stemming from her private investigation and phone call with SPS. (ECF No. 78 at 31–35.) While these allegations move the Second Amended Complaint in the right direction, Plaintiff still makes declarations that a conspiracy has occurred based only on her stated facts, rather than demonstrating the content of such an agreement. Moreover, even if Plaintiff had made nonconclusory allegations about the formation of a conspiracy, she still failed to demonstrate an unlawful purpose by the Parker Ibrahim Defendants existed. Simply, Plaintiff continues to repeat there were unlawful acts and harassment undertaken by the Parker Ibrahim Defendants in relation to the alleged mortgage debt, without attributing specific actions or conduct to the Parker Ibrahim Defendants beyond the "UNAPPLIED" instruction. (*Id.*)

Additionally, Plaintiff's fraud claim fails because she has not alleged the Parker Ibrahim Defendants made a material misrepresentation of a present or existing fact. As the Parker Ibrahim Defendants argue, even accepting as true the allegation they instructed SPS to divert Plaintiff's monthly mortgage payments, this is not a material misrepresentation made to anyone. (ECF No. 82 at 24–25). *See Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 366–67 (D.N.J. 2006) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261 (N.J. 2005) ("Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them."); *Robinson v. Wingate Inns Int'l, Inc.*, Civ. A. No. 13-2468, 2015 WL 4064654, at *3 (D.N.J. June 30, 2015) (dismissing plaintiff's fraud allegation for failure to allege "a misrepresentation of a presently existing or past fact"). Beyond this deficiency, Plaintiff only states how Credit Reporting Agencies acted in reliance on the Parker Ibrahim Defendants' actions, which damaged her, and not of her own reliance on the alleged misrepresentation. (ECF No. 78 at 33–34). *See Petit-Clair v. Att'y Gen. for New Jersey*, 730 F. App'x 120, 123–24 (3d Cir. 2018) ("'[A] plaintiff must prove that he or she was an intended recipient of the defendant's misrepresentations and that the plaintiff relied upon those misrepresentations.") (quoting *Port Liberte Homeowners Ass'n, Inc. v. Sordoni Constr. Co.*, 924 A.2d 592, 601 (App. Div. 2007)).

Likewise, Plaintiff does not provide enough specificity to meet the heightened pleading requirements of fraud. A statement that the Parker Ibrahim Defendants "somehow, were able to design the scheme to have these fraudulent instructions programmed to divert payments via the SPS processing systems" (ECF No. 78 at 35) does not facially provide this Court with an appropriate "how," as the heightened pleading standard is designed to ensure "notice of the '*precise misconduct*' with which defendants are charged and to prevent false or unsubstantiated charges." *Rapid Models & Prototypes, Inc.*, 71 F. Supp. 3d at 497 (emphasis added) (quoting *Rolo*,

155 F.3d at 658). Similarly, Plaintiff only states there was "a false email with a threat" and it was "purported . . . to be from the Plaintiff." (ECF No. 78 at 28.) Such conclusions, without more detail, do not offer enough specificity, especially since Plaintiff relies on this email but does not provide information about what the email said beyond claiming it to be false.[11] Instead, Plaintiff has submitted ECF No. 57, a letter by the Sussex County Prosecutor, in connection to this specific fraud to try and support her claim.

Accordingly, the Parker Ibrahim Defendants' Motion to Dismiss Count IV is **GRANTED**.

### 4.    Count V (Home Foreclosure Fraud Claim and Perjury Against Messinger)

The Duane Morris Defendants argue Count V should be dismissed because Plaintiff has failed to claim any material misrepresentation was made to her, only to the New Jersey Superior Court. (ECF No. 81 at 26.) They further contend Plaintiff fails to allege reliance on this claimed misrepresentation, and Plaintiff kept the perjury allegation in the Second Amended Complaint despite this Court having stated there is no private right of action.[12] (*Id.* at 25–26.) Plaintiff's only

---

[11] Even if Plaintiff desired to remedy this deficiency of the Complaint in an opposition to the motion to dismiss, it would not be allowed. *See Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (noting that courts "do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)"); *Marino v. Westfield Bd. of Educ.*, Civ. A. No. 16-00361, 2017 WL 216691, at *7 (D.N.J. Jan. 18, 2017) ("Plaintiff raises several new facts in its brief that purport to establish actual malice, but these new facts can have no place in the Court's 12(b)(6) analysis."); *Pue v. N.J. Dep't of Labor*, Civ. A. No. 23-855, 2023 WL 5671561, at *4 n. 8 (D.N.J. Sept. 1, 2023) ("While the Court construes Plaintiff's Amended Complaint liberally, the Court cannot consider new facts presented for the first time in opposition.").

[12] In this Court's prior opinion (ECF No. 71 at 29), it noted it is well established "[t]here is no private right of action under either the federal or the New Jersey perjury statutes," and Plaintiff cannot bring such a claim. *Taylor v. Jackson,* Civ. A. No. 19-16815, 2019 WL 5569070, at *3 (quoting *Ali v. Person*, 904 F. Supp. 375, 377 n.1 (D.N.J. 1995)).

response is "The Home Foreclosure Fraud Claim stands on its own!" yet she acknowledges that "there is no Private Right of Action for a perjury claim." (ECF No. 83 at 20.)

The Court finds Plaintiff has not adequately stated a claim for fraud against Messinger for many of the same reasons as the Court's prior opinion. Just as before, Plaintiff has failed to plead the third and fourth elements of a fraud claim. Plaintiff has failed to allege she relied on Messinger's assertion in the Foreclosure Case Information Statement that there were no related pending cases to the Foreclosure Action, nor has she made any statement regarding Messinger's intention for her to do so. Therefore, because Plaintiff has not alleged reliance on Messinger's representation, her fraud claim under Count V is insufficiently pled. *See Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, Civ. A. No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (finding general allegations of plaintiff's confusion and inability to evaluate options to be insufficient to plead reliance under common-law fraud). To the extent the fifth element of damages is now adequately alleged[13] by Plaintiff's statement that she accepted a "significant price reductions of over $75,000.00 to WIN THE RACE against the Fraudsters," such a determination does not cure the other fatal deficiencies of this claim in the Second Amended Complaint. (ECF No. 78 at 40.)

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count V is **GRANTED.**

### 5.    Count VI (Mortgage Servicing Fraud Claim Against Messinger and SPS)

The Duane Morris Defendants argue Count VI should be dismissed because Plaintiff's cause of action demonstrates awareness of the alleged falsity and therefore could not be something that was reasonably relied upon. (ECF No. 81 at 27–28.) Plaintiff responds that her cause of action

---

[13] In the First Amended Complaint, Plaintiff did not provide any number for potential damages as related to this specific cause of action. (ECF No. 40 at 10–11; ECF No. 71 at 20.)

in the Second Amended Complaint has sufficient particularity to pass the heightened pleading standards required of fraud. (ECF No. 83 at 21.)

The Court finds Plaintiff has not adequately stated a claim for fraud against Messinger and SPS. Just as in Count V, Plaintiff has failed to plead the third and fourth elements of a fraud claim. Plaintiff failed to allege she reasonably relied on the Mortgage Loan Payoff statement. Although she states her lawyer "relied on the false fraudulent numbers in the Mortgage Loan payoff statement," she also claims she had disputed such information "for over 3 years." (ECF No. 78 at 42.) Plaintiff further details she "disputed the fraudulent numbers but had no choice but to pay the Total Payoff amount in order to close on the sale of the home." (*Id.* at 43.) Simply, Plaintiff could not have relied upon the alleged false numbers in the Mortgage Loan Payoff statement and provided such information to her attorney with a genuine belief in them while also claiming she disputed the very same information for years. *See Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136, 141 (3d Cir. 2019) ("Thus, Kennedy simply cannot allege that he relied on Appellee's false representations or acquiesced to their demands when, according to Kennedy himself, he was not intoxicated, and he therefore knew any representation to the contrary to be false.") (citing *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017) (noting a party cannot *reasonably rely* on a representation if that party knows the representation to be false)); *Fogarty v. Household Fin. Corp. III*, No. Civ. A 14-4525, 2015 WL 852071, at *10 (D.N.J. Feb. 25, 2015) ("Perhaps more fatal to Plaintiff's claim is the fact that she cannot plausibly claim that she reasonably relied to her detriment on Household's representations . . . her Amended Complaint is replete with examples of her protestations of the existence of the 2003 Mortgage, and her unwillingness to accept Household's determination that the 2003 Mortgage was not obtained fraudulently."); *see also* Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation

24

is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.").

Therefore, because Plaintiff has not alleged reliance on Messinger's and SPS's representations,

her fraud claim under Count VI is insufficiently pled.

Accordingly, the Duane Morris Defendants' Motion to Dismiss Count V is **GRANTED.**

## C.    Leave to Amend and Enjoinment from Future Action

For the same reasons as their previous Motion to Dismiss, the Parker Ibrahim Defendants

argue Plaintiff should not be given another opportunity to amend her complaint, as any further

amendment would be futile. (ECF No. 83 at 3.) The Parker Ibrahim Defendants also argue they

would be significantly and unfairly prejudiced by having to continue to defend themselves against

Plaintiff's claims. (*Id.* at 3, 30.) The Parker Ibrahim Defendants further request Plaintiff be

permanently enjoined from filing further lawsuits against them without leave from the Court. (*Id.*

at 3–4, 30–31.) They assert Plaintiff should be found to be a vexatious litigant under the All Writs

Act because she has no reasonable or good faith basis to believe she can prevail in this suit, given

that the suit is duplicative of her previous dismissed actions and complaints. (*Id.* at 32.) Therefore,

the Parker Ibrahim Defendants argue any future lawsuit would be harassing and duplicative. (*Id.*)

This Court previously granted Plaintiff leave to amend her Complaint against the Parker

Ibrahim Defendants because it was not futile for Plaintiff to attempt to correct the identified

deficiencies for the non-precluded counts, and there was no apparent equitable reason to deny

leave to amend. (ECF No. 76 at 21.) However, while this Court showed leniency before given

Plaintiff's *pro se* status, it also held "Plaintiff's pleading against the Parker Ibrahim Defendants

was severely deficient" in the First Amended Complaint and warned Plaintiff "that this will be her

final opportunity to state a claim against these defendants." (*Id.* at 22.) The Court was "mindful of

the time and effort it has taken the Parker Ibrahim Defendants to respond to Plaintiff's allegations"

and stated it "will not grant Plaintiff unlimited opportunities to state viable claims, particularly where Plaintiff does not, in some cases, make any substantive allegations against the Defendants she has named." (*Id.*) This remains true after the Second Amended Complaint.

Accordingly, the Court finds amendment would be futile, and all claims are dismissed with prejudice. Defendants' arguments in support of enjoining Plaintiff from filing are duly noted, but the Court declines to do so. Plaintiff has tried to change her pleadings or provide more details when this Court presented her with such opportunity. Since the Court does not find Plaintiff acted in bad faith, despite her failure to adequately amend her causes of action, an injunction is not warranted.

## IV.    CONCLUSION

For the reasons set forth above, the Duane Morris Defendants' Motion to Dismiss (ECF No. 81) and the Parker Ibrahim Defendants' Motion to Dismiss (ECF No. 82) Plaintiff's Second Amended Complaint (ECF No. 78) is **GRANTED**. The Second Amended Complaint (ECF No. 78) is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  October 22, 2024